# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| The Board of Regents of the University of Houston System on behalf of the University of Houston System and its Member Institutions; The University of Houston System; and The Board of Regents of the University of Houston System, | Civil Action No. 4:16-cv-01839 |
|      Plaintiffs, | JURY |
| v. | |
| South Texas College of Law, | |
|      Defendant. | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Of Counsel*:

**SUTTON MCAUGHAN DEAVER PLLC**
Elizabeth W. King
Robert J. McAughan, Jr.
Albert B. Deaver, Jr.
Jeffrey A. Andrews
Three Riverway, Suite 900
Houston, Texas 77056
Telephone: (713) 800-5700
Facsimile: (713) 800-5699

**THE BUZBEE LAW FIRM**

Anthony G. Buzbee
Attorney-in-Charge
JP Morgan Chase Tower
600 Travis
Suite 7300
Houston, TX 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiffs*

August 1, 2016

**TABLE OF CONTENTS**

*Page*

I.  NATURE AND STAGE OF THE PROCEEDINGS  ........................................................1

II.  STATEMENT OF ISSUES AND STANDARD OF REVIEW  ........................................1

III.  SUMMARY OF ARGUMENT  ...............................................................................2

IV.  ARGUMENT, EVIDENCE AND AUTHORITIES  .........................................................3

    A.  UH Is Likely to Succeed in Showing that STCL's Recent Actions Have Caused a Likelihood of Confusion in the Marketplace  ................................4

        1.  Factor 1:  UH Has Strong and Valid Word and Color Trademarks  ...................................................................................4

            a.  UH's Registered Trademarks are Presumed Valid .........................4

            b.  UH's Common Law Word Marks are Distinctive and Strong  ...................................................................................7

            c.  UH's Red and White Colors Identify Its Education and Other Services  ........................................................8

            d.  The Geographic Aspect of UH's Trademarks Neither Invalidates Them Nor Allows STCL to Use HOUSTON In a Way That Causes Confusion  ...................................................10

            e.  UH Has Not Abandoned Its Family of HOUSTON Trademarks  .................................................................................11

        2.  Factor 2:  The Marks Are Substantially Similar ........................................12

        3.  Factor 3:  The Competing Products and Services Are Identical ...............16

        4.  Factor 4:  The Relevant Retail Outlets and Purchasers Are Substantially Identical  ...............................................................................17

        5.  Factor 5:  The Advertising Media Used is Substantially Identical  ...........18

        6.  Factor 6:  STCL's Intent to Infringe May Be Reasonably Inferred  ..........19

        7.  Factor 8:  The Degree of Care Weighs in Favor of Confusion .................20

8.   Factor 7: Incidents of Actual Confusion Increase with Each
     Passing Day ....................................................................................21

     a.   Actual Confusion within Sunbelt Consortium .............................21

     b.   Actual Confusion within the United States
          Postal Service ................................................................22

     c.   Actual Confusion within STCL ......................................................22

     d.   Actual Confusion by STCL Graduate ............................................22

B.   UH Will Continue to Suffer Irreparable Injury if STCL's Infringing
     Acts Are Not Enjoined ..........................................................................23

C.   The Balance of Hardships Weighs Heavily in Favor of UH .......................24

D.   A Preliminary Injunction Will Serve the Public Interest .................................25

V.   CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                *Page(s)*

*Abraham v. Alpha Chi Omega*,
708 F.3d 614 (5th Cir. 2013) ............................................24

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
518 F.3d 321 (5th Cir. 2008) ..............................................4

*Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*,
305 U.S. 315 (1938) ...........................................................7

*Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
550 F.3d 465 (5th Cir. 2008) ..............................................6

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*,
659 F.2d 695 (5th Cir. 1981) ............................................19

*Clearline Tech. Ltd v. Cooper B-Line, Inc.*,
948 F.Supp.2d 691 (S.D. Tex. 2013)...........................3, 4, 24

*Cold War Museum, Inc. v. Cold War Air Museum, Inc.*,
586 F.3d 1352 (Fed. Cir. 2009) ..........................................5

*Cont'l Motors Corp. v. Cont'l Aviation Corp.*,
375 F.2d 857 (5th Cir. 1967) ..............................................7

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) ..............................................2

*Debra P. v. Turlington*,
644 F.2d 397 (5th Cir. 1981) ..............................................8

*Elvis Presley Enterprises, Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1998) ...................................4, 12, 16

*Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.*,
628 F.2d 500 (5th Cir. 1980) ............................................12

*Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*,
No. 15-11509, 2016 WL 4010164 (11th Cir. July 26, 2016) .................6

*H. Marvin Ginn Corp. v. Int'l Ass'n of Fire chiefs, Inc.*,
782 F.2d 987 (Fed. Cir. 1986) ............................................6

*In re Dixie Rests., Inc.,*
   105 F.3d 1405 (Fed. Cir. 1997) ................................................................6

*Paulsson Geophysical Servs., Inc. v. Sigmar,*
   529 F.3d 303 (5th Cir. 2008) ..............................................................2, 3

*Pebble Beach Co. v. Tour 18 I, Ltd.,*
   942 F. Supp. 1513 (S.D. Tex. 1996) ....................................................11

*Quantum Fitness Corp. v. Quantum Lifestyles Centers., L.L.C.,*
   83 F.Supp.2d 810 (S.D. Tex. 1999)........................................................4

*Scott Fetzer Co. v. House of Vacuums Inc.,*
   381 F.3d 477 (5th Cir. 2004) ................................................................21

*Sunbeam Products, Inc. v. W. Bend Co.,*
   23 F.3d 246 (5th Cir. 1997) ....................................................................4

*Texans for Free Enter. v. Tex. Ethics Comm'n,*
   732 F.3d 535 (5th Cir. 2013) ..............................................................2, 3

*Trappey v. McIlhenny Co.,*
   281 F. 23, 27 (5th Cir. 1922) ..................................................................7

*Xtreme Lashes, LLC v. Xtended Beauty, Inc,*
   576 F.3d 221 (5th Cir. 2009) ................................................................21

**Statutes**

15 U.S.C. § 1064 ............................................................................................6

15 U.S.C. § 1065 ............................................................................................6

15 U.S.C. § 1125 ............................................................................................3

**Other Authorities**

Mark A. Lemley, *Did eBay Irreparably Injure Trademark Law?*, Soc. Sci. Re. Net.
(July 12, 2016) http://ssrn.com/abstract=2808677 (publication forthcoming in
   *Notre Dame L.R.* in 2017) ................................................................23

*McCarthy on Trademarks and Unfair Competition* (4th ed. 2014, June 2016 Update) .........11, 24

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Authenticating Declaration |
| B | Expert Report and Testimony of Hal Poret and Survey |
| C | Declaration of Leonard M. Baynes, Dean of UH Law Center |
| D | U.S. Trademark Registration No. 4,116,569 – "University of Houston" |
| E | U.S. Trademark Registration No. 3,025,231 – "University of Houston" |
| F | Dictionary entries for "university" |
| G | U.S. Trademark Registration No. 4,650,772 – "**HOUSTON**" |
| H | Excerpts from STCL's Facebook® page |
| I | Association of American of Law Schools Directory |
| J | www.archive.org Search Results of STCL website pages |
| K | Declaration of Jill Senn |
| L | Declaration of Kimbley L. Muller |
| M | Excerpts from Facebook® page of Randall Sorrels |
| N | *U.S. News and World Report* Best Law Schools Ranked in 2016 |
| O | STCL Trademark Application for HOUSTON COLLEGE OF LAW |
| P | *Texas Lawyer*, 'Houston Law Center Mourns Former Dean's Death' (July 12, 2016) |
| Q | Declaration of Lisa Holdeman, Associate Vice President of Marketing, Communications, and Media Relations for University of Houston System |
| R | STCL 2016 Color Comparison |
| S | Selected STCL 2016 Press Releases |
| T | Comments from STCL's Twitter social media account |
| U | Google Searches |
| V | *U.S. News and World Report* Part-Time Law Rankings, 2016 |
| W | Houston Chronicle Editorial Comments |
| X | Map Showing relationship between UH and STCL |
| Y | ICANN WHOIS records for www.hcl.edu |
| Z | Excerpts from STCL's Facebook® page concerning replacement diplomas |
| AA | John Royal Twitter feed |

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| BB | TexMaps publisher, Corpus Christi, Texas 'South Texas 41" x 43" Wall Map' located online at http://www.texmaps.com/south-texas-wall-map.html |
| CC | *YellowPages.Com* Businesses with "South Texas" in name near Houston, Texas |
| DD | *Wikipedia* "Rio Grande Valley" https://en.wikipedia.org/wiki/Rio_Grande_Valley |
| EE | *Texas Parks and Wildlife* 'Regions of Texas: Gulf Coast' http://tpwd.texas.gov/kids/about_texas/regions/gulf_coast/big_kids/ |
| FF | Declaration of Allison Regan |
| GG | Declaration of Robert Poole |
| HH | Comparison of website resume of Randall Sorrels before and after June 22, 2016. |
| II | Mark A. Lemley, *Did eBay Irreparably Injure Trademark Law?*, Soc. Sci. Re. Net. (July 12, 2016), http://ssrn.com/abstract=2808677 (publication forthcoming in *Notre Dame L.R.* in 2017) |
| JJ | 5 *McCarthy on Trademarks and Unfair Competition* § 30:47.70 (4th ed., June 2016 Update) |
| KK | *Houston Public Media* 'South Texas College of Law Has New Name: Houston College of Law' June 23, 2016 |

Plaintiffs, referred to collectively as "UH," respectfully request the Court enter a preliminary injunction to prevent continued irreparable harm to UH's trademarks and associated goodwill arising from defendant South Texas College of Law's ("STCL") recent change of name to "Houston College of Law" and its change to a predominately red and white color scheme.

UH has long used multiple trademarks in commerce, both federally registered and common law having "HOUSTON" and red and white colors to establish loyalty and goodwill among at least students, applicants, clients and potential clients and employers. STCL's change—after 93 years—to a confusingly similar name and color scheme belonging to UH has already caused actual confusion in the marketplace and irreparable harm to UH. This confusion has been documented by a survey conducted by the well-respected trademark authority Hal Poret, LLC. Exh. B. Indeed, evidence shows actual confusion as to the source of Houston College of Law's legal education services. Only a preliminary injunction prohibiting STCL from continued use of its ill-chosen new name will prevent further erosion of UH's trademark rights.

## I. NATURE AND STAGE OF THE PROCEEDINGS

UH has filed its Complaint and STCL has answered. *See* Dkt. Nos. 1 and 21. No trial date or Rule 16 Scheduling Conference have been set and no Rule 26(f) conference has occurred. This Court has set a briefing and hearing schedule for this motion anticipating an August 18, 2016, hearing. *See* 07/18/2016 Dkt. Text.

## II. STATEMENT OF ISSUES AND STANDARD OF REVIEW

Whether a preliminary injunction should be issued prohibiting STCL from using HOUSTON COLLEGE OF LAW and its logo:



as a name, mark and source identifier for its legal education services. The issuance of a preliminary injunction is reviewed for "abuse of discretion" as applied to the substantive requirements for an order of injunction. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

## III. SUMMARY OF ARGUMENT

To prevail on this request for injunctive relief, UH will demonstrate that: **(1)** a substantial likelihood of success in proving trademark infringement exists; **(2)** a substantial threat of continuing irreparable injury will exist if the injunction is not issued; **(3)** the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and **(4)** the grant of an injunction will not disserve the public interest. *Texans for Free Enter. v. Tex. Ethics Comm'n,* 732 F.3d 535, 536-37 (5th Cir. 2013).

Liability for trademark infringement under the Lanham Act is established by showing that the defendant "uses in commerce any word, term, name, symbol, or device" that is "likely to cause confusion, or to cause mistake" about the "origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Paulsson Geophysical Servs., Inc. v. Sigmar,* 529 F.3d 303, 309 (5th Cir. 2008). Here, not only do the facts on their face show a likelihood of confusion, but multiple instances of actual confusion have been documented. Further, a credible consumer survey by Hal Poret, LLC establishes a gross confusion rate of 24.8%, and when the control results are applied, a net confusion rate of 18.7%. Under controlling case law and Mr. Poret's expert opinion, these rates of actual confusion prove that a "significant" likelihood of confusion currently exists in the market.

UH will also show continuing irreparable harm because UH and STCL are direct competitors in the same geographic location. No amount of money can erase consumer confusion

or restore goodwill. *See Clearline Tech. Ltd v. Cooper B-Line, Inc.*, 948 F. Supp.2d 691, 715 (S.D. Tex. 2013) ("[w]here the infringement involves direct competitors, a finding of irreparable harm may well be appropriate"). Further, UH will show that the significant injury UH will face in the absence of the requested injunction outweighs any potential harm to STCL. UH has invested 89 years in building goodwill associated with its Word and Color Marks, and the relevant public has long come to associate UH with those marks. STCL only recently adopted its similar mark and color scheme.

Finally, UH will show that not only would the grant of the requested injunction ***not*** disserve the public interest, it would promote it by reducing the chance of potential and continuing confusion among the public.

## IV.     ARGUMENT, EVIDENCE AND AUTHORITIES

To prevail on this request for injunctive relief, UH will demonstrate that: **(1)** a substantial likelihood of success in proving trademark infringement exists; **(2)** a substantial threat of continuing irreparable injury will exist if the injunction is not issued; **(3)** the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and **(4)** the grant of an injunction will not disserve the public interest. *Texans for Free Enter.*, 732 F.3d at 536-37.

Lanham Act liability is established by showing that the defendant "uses in commerce any word, term, name, symbol, or device" that is "likely to cause confusion, or to cause mistake" about the "origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Paulsson Geophysical Servs., Inc.,* 529 F.3d at 309 (quoting 15 U.S.C. § 1125(a)(1)(A)). The Court first considers whether the plaintiff has a "protectable right in the mark" and second whether there is a "likelihood of confusion between the marks." *Id.*

As shown below, UH is being irreparably injured because UH and STCL are direct competitors in the same geographic region, and because STCL's use of the confusingly similar Houston College of Law name, logo and color scheme is likely to cause confusion—and actually has caused confusion—as to source, sponsorship or affiliation between the schools. *See Clearline Tech. Ltd v. Cooper B-Line, Inc.*, 948 F.Supp.2d 691, 715 (S.D. Tex. 2013) (holding that "[w]here the infringement involves direct competitors, a finding of irreparable harm may well be appropriate").

### A. UH Is Likely to Succeed in Showing that STCL's Recent Actions Have Caused a Likelihood of Confusion in the Marketplace

To demonstrate likelihood of success on the merits, UH must show that STCL's name change likely will cause confusion. In the Fifth Circuit, courts look to the following non-exhaustive list of factors to assess the likelihood of trademark confusion: **(1)** the strength of the plaintiff's mark; **(2)** the similarity of design between the two marks; **(3)** the similarity of the products or services; **(4)** the identity of the retail outlets and purchasers; **(5)** the similarity of advertising media used; **(6)** the defendant's intent; **(7)** evidence of actual confusion; and **(8)** the degree of care exercised by potential purchasers. *Am. Rice, Inc. v. Producers Rice Mill, Inc.,* 518 F.3d 321, 329 (5th Cir. 2008). "No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). Each of these factors are addressed below.

### 1. <u>Factor 1</u>: UH Has Strong and Valid Word and Color Trademarks

"The strength of a trademark in the marketplace is measured by its effectiveness in identifying a source of goods." *Quantum Fitness Corp. v. Quantum Lifestyles Centers., L.L.C.,* 83 F.Supp.2d 810, 818-19 (S.D. Tex. 1999); *see Sunbeam Products, Inc. v. W. Bend Co.*, 123

F.3d 246, 252 (5th Cir. 1997) ("The gravamen of trademark law is source identification.").

For this motion, UH relies on both registered and common law ("Word Marks"), and on its red and white and color marks ("Color Marks"), specifically: UNIVERSITY OF HOUSTON®, **HOUSTON**®, UNIVERSITY OF HOUSTON LAW™, HOUSTON LAW™, HOUSTON™, UNIVERSITY OF HOUSTON COLLEGE OF LAW™. *See* Exh. C.

### a. UH's Registered Trademarks Are Presumed Valid

"UNIVERSITY OF HOUSTON" and "HOUSTON" are widely-recognized UH trademarks and the subject of numerous federal registrations. For example, UH owns the registrations (many of which include legal education services) listed in Dean Baynes' Declaration submitted as Exh. C. *Id.* at ¶9. Several are incontestable going back as far as 1963, based on a first use date of 1934. *Id.* (Reg. No. 0,747,078).

UH also owns Reg. No. 4,116,569 for the word mark UNIVERSITY OF HOUSTON as used for, among other things, legal education services, Exh. D, and Reg. No. 3,025,231 "UNIVERSITY OF HOUSTON" for, among other things, diplomas. Exh. E. The University of Houston mark was used in commerce at least as early as 1934. Exh.C.

As with every mark whose dominant term is geographic, these marks are registered under 15 U.S.C. § 1052(f), which means UH presented persuasive evidence that UH's use of HOUSTON had acquired distinctiveness for its services, including legal education.[1] *See Cold War Museum, Inc. v. Cold War Air Museum, Inc.,* 586 F.3d 1352, 1356 (Fed. Cir. 2009) (holding that "the presumption of validity that attaches to a Section 2(f) registration includes a presumption that the registered mark has acquired distinctiveness").

---

[1] The Trademark Office registered the UNIVERSITY OF HOUSTON mark as a whole because it had acquired secondary meaning transcending geographic descriptiveness, but required that the term "UNIVERSITY" be disclaimed as generic. *See* Exh. D.

Under federal statute, the registered UNIVERSITY OF HOUSTON trademarks cannot be canceled on grounds of geographic descriptiveness, as they are protected under §14 of the U.S. Trademark Act and in some cases are incontestable under §15. *See* 15 U.S.C. §§ 1064, 1065.

Despite the incontestable registrations UH owns where HOUSTON is or is part of the mark, STCL contends that HOUSTON—the dominant feature in all of the UH marks—has not acquired distinctiveness in the field of higher education. STCL's position is legally implausible because the terms UNIVERSITY OF and COLLEGE, or "College of Law" versus "Law Center" are not capable of source-indicating function as a matter of law. *See H. Marvin Ginn Corp. v. Int'l Ass'n of Fire chiefs, Inc*., 782 F.2d 987, 990 (Fed. Cir. 1986) (holding that generic terms cannot be protected under trademark law).[2] *Cf. Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.,* No. 15-11509, 2016 WL 4010164, at *11 (11th Cir. July 26, 2016) (where the distinguishing terms NATIONAL versus INTERNATIONAL were wholly sufficient to obviate similarity since they were antonyms of one another) ("the parties stipulated that Merriam-Webster's On-line Dictionary classifies 'international' as a 'near antonym' of national.")

While UH did not register the "HOUSTON" mark by itself until 2014,[3] the term "HOUSTON" has been used by UH in commerce since at least 1953. The HOUSTON mark is thus protected under common law as a term that has acquired distinctiveness, regardless of

---

[2] *See also* Webster's Third New International Dictionary, Unabridged, s.v. "university," accessed August 1, 2016, http://unabridged.merriam-webster.com. Webster's Third New International Dictionary, Unabridged, s.v. showing that universities are composed of "colleges." Exh. F.

[3] *See* Exh. G, U.S. Trademark Registration No. 4,650,772 for the stylized **HOUSTON**® mark for, among other things, printed educational materials and memorabilia (such as the types historically sold by both UH and STCL to promote their respective law colleges).

federal registration.[4]

### b. UH's Several Common Law Word Marks Are Distinctive and Strong

UH's College of Law is also known by the trade name the University of Houston Law Center, along with the common law trademarks HOUSTON LAW, HOUSTON, and UNIVERSITY OF HOUSTON COLLEGE OF LAW. Exh. C at ¶¶9 & 11. UH's acclaimed Law Review has been named HOUSTON LAW REVIEW for many decades. *Id*. at ¶13.

The association in consumers' minds of UH with "HOUSTON" and "COLLEGE OF LAW" is significant. The mark University of Houston College of Law is proudly displayed on the permanent signage of UH's College of Law facilities and is used on its diplomas. *Id*. at ¶14.



Diplomas are often displayed by UH graduates to signify to clients and prospective clients the origin of their legal education. Exh. C. Use of these marks on diplomas operate as more than

---

[4] It is not necessary for a geographic term to be federally registered to have acquired secondary meaning—unregistered geographical terms having acquired distinctiveness have common law trademark rights. *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 335 (1938); *Cont'l Motors Corp. v. Cont'l Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967); *Trappey v. McIlhenny Co.*, 281 F. 23, 27 (5th Cir. 1922).

source identifiers in a traditional sense.[5] These marks also operate as a certification of successful completion of the law degree course offered by UH; they tell the world where that legal education was garnered and this is exactly the type of information that could impact prospective employer's and/or client's evaluation of that lawyer's candidacy for employment or hire.[6] These uses of UNIVERSITY OF HOUSTON COLLEGE OF LAW date back several decades, and have been in continuous use in at least substantially similar form to today. Exh. C at ¶11.

Additionally, for years many third parties, such as the Association of American of Law Schools (AALS), have referred to UH's College of Law simply as "HOUSTON"—reinforcing the fact that one of the UH trademarks is the term HOUSTON. Exh. I.

These common law UH trademarks used in conjunction with UH's official colors of red and white operate as brands, are famous and are widely-known by the relevant public as a designation of source of UH's high quality education and other services.

### c. UH's Red and White Colors Identify Its Education and Other Services

The colors red and white are the official school colors of UH and have been since its official State seal was adopted in 1934. Exh. C at ¶10. These official colors are ubiquitous and consistent throughout UH in its academic, social and athletic realms.[7]

---

[5] The conferring of a degree is significant and carries great meaning. *See Debra P. v. Turlington*, 644 F.2d 397, 404 (5th Cir. 1981) (holding that a diploma "is a property interest as that term is used constitutionally").

[6] Excerpts from STCL's Facebook® page following the announcement show many unhappy STCL graduates including those who express concern that a degree from "Houston College of Law" will force STCL alumni to explain that they are the graduates from "that OTHER Houston law school, you know, NOT U.H." *See* Exh. H at 6/22/2016 at 12:51 PM.

[7] In contrast, STCL has used a wide range of color schemes since its founding 93 years ago. An Internet archive search indicates that it started using vibrant red and white as colors on its website in October 2015. Exh. J. Yet, even through last week, STCL continued to sell garnet and gold colored items in its bookstore and distribute literature colored thusly as well. Exh. K. Then, on June 22, 2016, STCL



Every Friday is Cougar Red Friday at UH. *Id*. at ¶10. Each of the fifteen colleges in the University of Houston System utilizes the famous red and white color mark. *Id*. This consistent use of its color mark extends to the College of Law both in trademarks and in advertisements:



*Id*.

       As Mr. Kim Muller, former Associate General Counsel for Shell and head of trademarks for Shell North America testifies (Exh. L), there is no rule of law or practice that prohibits an entity from having more than one trademark associated with its services, particularly in this era of dynamic marketing where such is the norm rather than the exception. *Id*. at ¶6. It is therefore not unusual that UH owns various mark iterations of its dominant term "HOUSTON" combined with other matter: LAW CENTER, LAW, COLLEGE OF LAW, and has not registered each of those iterations. *Id*. at ¶6. Further, adopting multiple marks for a particular service or good does

---

announced its name change to Houston College of Law and unveiled its new logo showing the mark along with a brighter red and white color scheme. Exh. C. at ¶22 & Exh. S

not, by itself, mean a pre-existing mark is abandoned. *Id.* at ¶5.

> **d.** **The Geographic Aspect of UH's Trademarks Neither Invalidates Them Nor Allows STCL to Use HOUSTON in a Way That Causes Confusion**

STCL apparently contends that because its law school resides in Houston, Texas, it may use the term HOUSTON as part of its name and brand regardless of whether such use creates a likelihood of confusion in the marketplace. That analysis is incorrect.

STCL's assertion that adopting its city name as its trademark is lawful, is "fair use" or would enhance its reputation or increase its ranking[8] without confusing the relevant public is provably false on three fronts. First, only four law schools in the top fifty have geographic names and one of those four is UH.[9] Exh. N. Use of a geographic city name, in and of itself, does not cause reputational success. Second, without exclusivity of use, the name "Houston College of Law" is legally incapable of being a valid trademark because it would be used co-extensively in commerce with UNIVERSITY OF HOUSTON COLLEGE OF LAW on UH's diplomas and signage.[10] Third, both at common law and under federal law the analysis of geographic terms that have acquired secondary meaning is well-settled: Once a mark starts to operate as an indicator of source (and not solely as a geographic designation), traditional likelihood of

---

[8] Randall Sorrels, an STCL Board member, wrote on his Facebook page that adopting Houston as its geographic name would lead to an increase in rankings. *See* Exh. M.

[9] Stanford University, which is located in Palo Alto, California, and the University of Notre Dame, which is located in South Bend, Indiana, are excluded because the cities "Stanford" and "Notre Dame," respectively, likely were only listed because the universities are self-contained and have their own zip codes. Further, university systems that only have a city name included to designate a certain branch campus of that university system were also not included as having a city name as an integral part of their school name.

[10] This fact alone raises important questions on STCL's intent. Why would STCL adopt a new name that (a) is likely incapable of registration on the Principal Register without a disclaimer of "HOUSTON" and "COLLEGE OF LAW" or proof of acquired distinctiveness; (b) is not associated with its program; and (c) is directly associated with a college of law within a multi-college university—UH College of Law.

confusion considerations apply.

Instead of reflecting on the damage it has caused and the negative reactions by official media and its own alumni, STCL has launched an attack on the integrity of the UH Word Marks, suggesting that they are unenforceable at common law and that the **HOUSTON** registration should be canceled. Dkt. No. 21 at 16-19. However, STCL's attack is divorced from U.S. trademark law. Marks that start out as geographically descriptive can transcend their original meaning into source identifiers. This transformation occurs when "the mark no longer causes the public to associate the goods or services with a particular ***place***, but with a particular … source." *See Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1538-39 (S.D. Tex. 1996) *aff'd as modified,* 155 F.3d 526 (5th Cir. 1998); *see also* 2 McCarthy on Trademarks and Unfair Competition § 14:12 (4th ed., June 2016 Update) ("[e]ven if one seller has achieved secondary meaning in a geographic term …, anyone who is in fact located in that place has a right to tell purchasers of his location. Such description of geographical origin must, however, be made in a purely descriptive and non-trademark sense"). STCL cannot credibly claim it does not intend for its new name to acquire secondary meaning—why else would it file a federal trademark application for it. *See* Exh. O.

Through UH's pervasive and long-standing use of HOUSTON as a dominant part of its brand for education services, the public has come to associate HOUSTON with the educational services offered by UH, rather than as the city in which the services are offered.[11]

### e.     UH Has Not Abandoned Its Family of HOUSTON Trademarks

In its answer and counterclaim, STCL contends that UH has abandoned its common law trademarks and its registered **HOUSTON**® trademark through non-use. *See* Dkt. No. 21 at 16-

---

[11]. Indeed, the media often shortens UH's trade name to HOUSTON LAW CENTER. *See, e.g.*, Exh. P.

19. However, the declaration of Lisa Holdeman, UH Assistant Vice President for Marketing and Branding, establishes that all of the marks challenged by STCL have been in substantially continuous use since adoption, and thus have not been abandoned and there has never been any intention to do so. Exh. Q.

In summary, UH's brands comprising HOUSTON, with and without the red and white Color Marks, are strong, have been used in commerce for at least 89 years and are protected by numerous federal registrations and the common law. Thus, this factor leans heavily in favor of UH and supports a finding of likelihood of confusion.

## 2. <u>Factor 2</u>: The Marks Are Substantially Similar

The Fifth Circuit has adopted a "subjective eyeball test" to determine whether two marks are similar. *Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.,* 628 F.2d 500, 504 (5th Cir. 1980). "The use of a mark in advertising is highly probative of whether the mark creates a likelihood of confusion in relation to another mark." *Elvis Presley Enters.,* 141 F.3d at 197. "Evidence of the context in which a mark is used on labels, packages, or in advertising material directed to the goods is probative of the reaction of prospective purchasers to the mark." *Id.* (citations omitted). For marks that have achieved secondary meaning, more weight is given to distinctive portions of a mark and less weight to generic matter. *Id.* at 202; *In re Dixie Rests., Inc.,* 105 F.3d 1405, 1407 (Fed. Cir. 1997).

STCL cannot use HOUSTON as part of a mark for its legal education services if that use is likely to cause confusion with the senior marks of UH. In this case, "college of law" is generic and thus it is clear that there is no other aspect to the STCL name "HOUSTON COLLEGE OF LAW" that could be considered dominant other than the word HOUSTON. *In re Dixie Rests., Inc.*, 105 F.3d at 1407 (affirming TTAB's finding that "DELTA," not the disclaimed generic

term "CAFE," is the dominant portion of the mark THE DELTA CAFE). Substituting "College of" for "University of" does not obviate similarity because both phrases are generic, and universities are composed of colleges.

Using the "subjective eyeball test," it is easy to see that the dominant portions of STCL's new commercial brand are the word HOUSTON and the red and white color scheme by the way each mark is marketed:



To document this similarity, UH commissioned a trademark survey from renowned survey expert Hal Poret. Mr. Poret's Report, data and curriculum vitae are attached as Exh. B. Mr. Poret's entire report and testimony is compelling in its methodology and findings and in summary concludes that "significant" likelihood of confusion exists because of STCL's name change: *Id*. at 2 & 57.

> Across all Test Groups, 24.9% of respondents mistakenly believed that the Houston College of Law is part of or affiliated with University of Houston.
>
> Across all Control Groups, 6.5% of respondents answered that the South Texas College of Law-Houston is part of or affiliated with University of Houston.
>
> Subtracting the 6.5% noise level from the gross 24.9% confusion rate yields a net

confusion rate of 18.4%. Based on the net confusion rate of 18.4% and the other data discussed below, it is my opinion that there is an appreciable likelihood of confusion with respect to University of Houston created by the change to the name Houston College of Law.

*Id.* at 40.

On page 58 of the Poret Report, it was noted that a number of respondents who believed the marks were related referred to the shared color combination. Yet, in the interests of being conservative, the Report states:

As noted before, since the control keeps all of these elements constant, it is screening out any confusion caused by similarity of color or other non-name elements. This is a further indication that the net confusion level is conservative, in that there are indications in the verbatim answers that the colors do exacerbate the tendency to connect Houston College of Law to University of Houston, and yet such confusion is <u>not</u> counted in the 18.4% net confusion level.

*Id*. at 58 (emphasis in original).

STCL contends it adopted HOUSTON as the dominant part of its new name simply to identify its geographic location, but has no plausible explanation for adjusting its color scheme closer to UH's longstanding Color Marks. In a June 28, 2016, press release, STCL asserted that it had ***not*** adopted new colors, and that it had used "crimson" as a "primary color" since the 1960's. Exh. S. This assertion was reaffirmed in its Answer and Counterclaim: "U of H uses fire-engine red, while the College uses crimson." Dkt. No. 21 at 3. However, a simple comparison of the former garnet red and gold used even this year by STCL in literature and on t-shirts compared to the bright red placard mailed by STCL promoting the Dean's tour demonstrates an appreciable change. Exh.R (comparing Exh. K-1 to STCL mailer).



Regardless of the adjective STCL chooses to describe the red color it uses, the fact remains that its new red and white color scheme is confusingly similar to the UH red and white Color Marks. No special expertise is required to appreciate this. Simply comparing the STCL evidence of use to the UH colors demonstrates this with alacrity. Exhs. K, R & S

The public, including lawyers who graduated from STCL, immediately recognized the confusing similarity of STCL's new brand. On leading social media sites, many STCL law graduates noted the confusion the change will cause, creating a need to explain their diplomas, and expressing bafflement over the decision.[12] *See* Exhs. H, T.

Lastly, the confusingly similar character of STCL's new name can be easily demonstrated through simple Internet searches of the type likely to be used by prospective applicants and other members of the relevant public. For example,

    1.     A Google search for "HOUSTON COLLEGE OF LAW" returns results of both UH and STCL. Exh. U, Google Searches

    2.     A Google search for "HOUSTON COLLEGE OF LAW FACEBOOK" returns results of UH and STCL. Exh. U, Google Searches

---

[12] Exhibits H and T depict comments on Facebook and Twitter responding to posts from STCL relating to the name change from June 22, 2016 through July 24, 2016. On Facebook there were almost 200 comments to the name change and overwhelming majority were negative. Several of the comments specifically spoke to the confusion that the name change would cause with University of Houston Law School. On Twitter 9 out of 11 comments were negative.

3. A Google images search for "HOUSTON COLLEGE OF LAW" returns both UH's and the STCL's logos in the same color scheme. Exh. U, Google Searches

4. A Google search for "Houston Law College" returns UH first and then, further down on the page, STCL. Exh. U, Google Searches

In summary, STCL's new name and logo are confusingly similar to UH's trademarks. This factor overwhelmingly favors finding a likelihood of confusion.

### 3. <u>Factor 3</u>: The Competing Products and Services Are Identical

"The greater the similarity between products and services, the greater the likelihood of confusion." *Elvis Presley Enters.,* 141 F.3d at 202.

There can be no legitimate dispute that both UH and STCL are in the business of providing legal education and related services to college graduates. Moreover, the broader educational platform of UH and the larger student body and alumni network serve to augment the fame and goodwill of the UH trademarks.

Both law schools draw a majority of their students from the same regions. Up to 75% of UH's entering classes for the past five years have been composed of students from Texas and Florida—the very same areas that STCL focuses on in its recruiting and the same two states the Dean of STCL is visiting to promote its infringing name. *See* Exh. C at ¶19.

Further, both schools cater to night or part time students. UH is recognized by *US News and World Report* as one of the top part time law colleges in the United States, rated 6th in the nation, and it was noted by the Report that "Part time law programs allow working professionals to balance a career with evening or weekend courses." *See* Exh. V. What STCL does not have and what it desperately wants is a nationally ranked full time program.

Moreover, as stated above, social media comments to the STCL name change announcement showed overwhelming disapproval. This is even more relevant since the concern

for confusion was not by ordinary members of the public, but primarily from STCL law graduates—attorneys who are more apt to understand the legally actionable confusion this name change causes by direct competitors issuing diplomas that appear to be from the same law school.

Because the products and services are identical, this factor compels a finding of likelihood of confusion.

4.      **Factor 4**: **The Relevant Retail Outlets and Purchasers are Substantially Identical**

While "[d]ifferences in the parties' customer bases can lessen the likelihood of confusion,"[13] here, the relevant retail outlets and purchasers are substantially identical.

There can be no legitimate dispute that the relevant public for both UH and STCL includes prospective law students choosing a law school. Indeed, STCL admits as much in its answer and counterclaim. Dkt. No. 21 at 2. Additionally, because law school graduates carry their law school degrees with them into their professions and their law schools are inherently part of their marketing of their own services (because schools attended are routinely included on attorney résumés and firm marketing "bios"[14]), it is also logical that the relevant public would include those who would potentially hire or retain law school graduates. Exh. B, at 7. Such individuals are reasonably viewed as prospective "consumers" of the law school in the sense that they are purchasing the "product" produced by the law school (the graduate) and their impression of the law school attended might influence their hiring decision. *Id*. Such individuals would include (i) individuals responsible for retaining an attorney if they or their family needed one; (ii) owners, managers, general counsel, or other company representatives who would have responsibility for retaining an attorney for business needs or disputes; and (iii) human resources

---

[13] *Quantum*, 83 F.Supp.2d at 826.

[14] *See* Section IV(A)(8)(d), *infra*.

representatives who are responsible for recruiting, interviewing and/or hiring. *Id.* at 7-8.

While law firms were excluded from the Poret Survey due to publicity associated with this case, the relevant public certainly includes law firms. *Id.* at 7 n. 3. It includes any person who will evaluate a resume of a prospective employee and potentially believe that they attended a law school they did not attend. *Id.* at 7. It also extends to the media, which has, by and large, expressed concerns about the name change. For instance, a mere two days after STCL's announcement, on June 24, 2016, the Editorial Board of the Houston Chronicle newspaper penned an editorial stating that the name STCL selected was very likely to be confused with UH and its well-known brand; on-line commenters to the article agreed. Exh. W.

Moreover, it is logical that any member of the public who shops in a store such as Academy or Barnes & Noble (the latter is the independent operator of the STCL bookstore on campus) might be confused when encountering goods displaying the two marks. The two schools even have campus buildings located on the same street. *See* Exh X.

Because the relevant retail outlets and purchasers are essentially identical, this factor supports a finding of a likelihood of confusion.

### 5. <u>Factor 5</u>: The Advertising Media Used Is Substantially Identical

There can be no reasonable dispute that UH and STCL employ nearly identical advertising media. Both UH and STCL use press releases, advertisements, mailings, online media, t-shirts, hats, diplomas, receptions, tours and other similar media. *See* Exh. C, at ¶ 16. Moreover, UH spends at least $800,000.00 annually promoting its brand apart from the budget allocated to athletics and individual colleges. *See* Exh. Q.

Since June 22, STCL has engaged widespread media advertising for the infringing HOUSTON COLLEGE OF LAW mark, and changed its website address to www.hcl.edu. Exh.

Y. STCL also is encouraging graduates to order new diplomas bearing the "Houston College of Law" name so that these alumni might convey that they graduated from a school that they did not actually attend. Exh. Q. Following this Court's hearing on July 18, 2016, STCL issued a press release confirming its intention to proceed with this litigation. Exh S.[15] An example of STCL's aggressive, yet typical, ad campaigns is seen in the Houston Chronicle ads run on Sunday July 10, 2016 targeted to the same public as UH. Exh. C, at ¶24. Compare one of STCL's two Sunday advertisements with UH's corresponding ad correcting the association of HOUSTON LAW to UH. *Id.*

Because the advertising media and the target audience are essentially identical, this factor compels a finding of likelihood of confusion.

### 6.        <u>Factor 6</u>: STCL's Intent to Confuse May be Reasonably Inferred

"[I]ntent of defendants in adopting [their mark] is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff,] that fact alone may be sufficient to justify the inference that there is confusing similarity." *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703-04 (5th Cir. 1981).

It is undeniable that the name change from South Texas College of Law to Houston College of Law makes STCL's new name more similar to UH's Word Marks than before. According to STCL, the name change was motivated because "the 'South Texas' region was generally understood to encompass Houston. Now it does not." Dkt. No. 21 at 2. Yet, maps today identify Houston as part of "South Texas." *See* Exh.BB. Moreover, a search of the yellow pages at www.yellowpages.com reveals scores of companies in Houston use "South Texas" in their name across every imaginable industry. Exh. CC. This Court resides in the "Southern District of

---

[15] Once again social media responded to STCL's tactics, this time by a STCL alumnus who is a member of the media and writes for the Houston Press. Exh. AA.

Texas." STCL's purported motivation for jettisoning "South Texas" and adopting "Houston" is suspect because to whatever extent "South Texas" does not accurately include Houston the same could be said for any city in the southern half of the state.[16] Given STCL's Board Member's admonishments to STCL lawyers who objected to the name change that they were "underestimating the planning of great trial lawyers" (Exh. N), the name changes appear to have been done in bad faith. It is also undeniable that around the same time, STCL changed its color scheme to be more similar to UH's Color Marks. There is no valid reason for this color change.

Because it may be reasonably inferred that STCL's intent was to encroach on UH's significant brand recognition and unfairly garner traction for STCL, this factor supports a finding of a likelihood of confusion.

       7.     <u>**Factor 8**</u>**: The Degree of Care in Making Purchasing Decision Weighs In Favor of Confusion**

Some members of the relevant public are prospective students already familiar with the STCL and UH, and so necessarily would be equipped to exercise a higher degree of care in discerning between the two schools, but that would only be a portion of the relevant public. The portion of the relevant public that is at least as important are those who are not familiar with the differences. This portion includes: (a) individuals who would be responsible for retaining an attorney if they or their family needed one; (b) owners, managers, general counsel, or other company representatives who would have responsibility for retaining an attorney for business needs or disputes; and (c) human resources representatives who are responsible for recruiting, interviewing and/or hiring, and would therefore be involved in considering resumes of

---

[16] For example, the region further south is made up of Laredo, Brownsville, and McAllen, better known as the Rio Grande Valley. Exh. DD. The region of the state that includes Houston may be better known as "the Gulf Coast." *See* Exh. EE. If the change was motivated by wanting a regionally accurate moniker, under STCL's logic it should have changed to "Gulf Coast College of Law."

prospective job candidates. These individuals may not be familiar with the Houston legal market and its law schools. These individuals may not know the differences between the respective schools, including each schools reputation or school rank; and (d) those persons who purchase memorabilia from STCL believing that they are supporting UH and not realizing otherwise.

Thus, this factor weighs in favor of confusion.

8. <u>**Factor 7**</u>: **Incidents of Actual Confusion Increase with Each Passing Day**

"Actual confusion need not be proven, but if consumers have confused the junior mark for the senior mark, this is '***the best evidence of likelihood of confusion***.'" *Xtreme Lashes, LLC v. Xtended Beauty, Inc,* 576 F.3d 221, 229 (5th Cir. 2009)(emphasis added). "'Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof.'" *Id.* "To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys …." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004). As discussed above, Mr. Poret's consumer survey establishes instances of actual confusion. *See* Exh. B.

a. **Actual Confusion within Sunbelt Consortium**

The Sunbelt Consortium consists of seventeen participating law schools from the south and southeast regions of the U.S. Both UH and STCL are members and have been for some time. Exh. FF, at 3. Apparently, after announcing its name change, STCL emailed Sunbelt about the name change. *Id.* at 6. In response to STCL's entreaty, Sunbelt mistakenly replaced UH's name in the drop down menu of participating law schools with "Houston College of Law." *Id.* at 4-5 and attached screen shot.

UH discovered this error on June 27, 2016, and that same day, Allison Regan with UH

called Carol North at Sunbelt to report the error. After Ms. Regan explained the error, Ms. North replied that she had done what was requested in the email. Ms. Regan replied that UH did not send Sunbelt an email. *Id*. at 6. After additional explanations, including that the University of Houston Law Center and Houston College of Law/South Texas College of Law are two separate law schools, Ms. North changed the "Houston College of Law" entry back to "University of Houston College of Law," and changed the "South Texas College of Law" entry to "Houston College of Law." This is a compelling example of actual confusion.

### b.   Actual Confusion within the United States Postal Service

On July 20, 2016, almost a month after STCL announced its name change, UH received a STCL letter that had been mistakenly forwarded to UH by the United States Postal Service. Exh. GG. STCL, using an envelope with its new red and white "Houston College of Law" logo, apparently mailed correspondence to a STCL student or alumni. The letter was undeliverable as addressed and the USPS affixed a forwarding label having UH's proprietary zip code. *Id*. at 4.

The only possible conclusion is that the USPS was confused by the red and white "Houston College of Law" logo on the envelope into believing the letter originated from UH. This too is a compelling example of actual confusion by a sophisticated entity that deals with UH mail day in and day out.

### c.   Actual Confusion by STCL

Even STCL is confused by its name change. UH has received emails from UH Law Center graduates forwarding communications sent by STCL to these UH graduates mistakenly identifying them as graduates of "Houston College of Law." Exh. C, at ¶25.

### d.   Actual Confusion by STCL Graduate

Randy Sorrels is a graduate of STCL and an STCL Board member involved in the name

change to Houston College of Law. Exh. HH. After June 22, 2016 (when STCL announced its name change), Mr. Sorrels updated his résumé on his law firm's web site. However, rather than listing STCL's new name, Mr. Sorrels identified the "University of Houston College of Law" as his *alma mater*, and that he had served on the "Houston Law Review"—which is the longstanding name of UH's Law Review. While he has since updated his firm's website resume to indicate he graduated from "Houston College of Law"—which he technically did not—he still purports to have served on UH's Houston Law Review. Compare the two screenshots below from Mr. Sorrels' website résumé.



*Id.*

In summary, with Mr. Poret's survey alone there is sufficient evidence of actual confusion to support the requested injunction. With these additional instances of actual confusion, this factor overwhelmingly supports UH and entry of the preliminary injunction.

**B.      UH Will Continue to Suffer Irreparable Injury if STCL's Infringing Acts Are Not Enjoined**

STCL's adoption and active promotion of the confusingly similar Houston College of Law name violates UH's federal and common law trademarks and will continue to cause irreparable harm to UH. The inadequacy of legal remedy resides in the fact that many members of the relevant public will not know they are confused by the similar brands, and yet this confusion can impact not only their initial perception of the UH law school, but also impact their assessment of future graduates. Mark A. Lemley, *Did eBay Irreparably Injure Trademark Law?*,

Soc. Sci. Re. Net. (July 12, 2016) http://ssrn.com/abstract=2808677 (publication forthcoming in *Notre Dame L.R.* in 2017) (Exh. II).

Moreover, it is reasonable to presume irreparable harm upon finding a likelihood of confusion. *Abraham v. Alpha Chi Omega,* 708 F.3d 614, 627 (5th Cir. 2013) ("[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed") (*quoting* McCarthy on Trademarks and Unfair Competition).

As Professor McCarthy states,

the reason for the trademark presumption of irreparable injury is that once a probability of proving likelihood of confusion at trial is shown, the trademark owner's business goodwill and reputation are at risk.

… A likelihood of damage to reputation is by its nature "irreparable." Like trying to un-ring a bell, trying to "compensate" after the fact for damage to business goodwill and reputation cannot constitute a just or full compensation. This distinguishes trademark cases from the neighboring areas of patent and copyright law.

5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:47.70 (4th ed., June 2016 Update) (footnote omitted) (Exhibit JJ). And, as this Court has recognized "[w]here the infringement involves direct competitors, a finding of irreparable harm may well be appropriate" based on a finding of likelihood of confusion. *Clearline Tech. Ltd.*, 948 F.Supp.2d at 715.

Regardless of whether irreparable injury is presumed, UH has shown actual irreparable injury to its reputation and irreparable weakening of the distinctiveness of its brand. This injury can be stopped only if a preliminary injunction is entered.

### C.     The Balance of Hardships Weighs Heavily in Favor Of UH

STCL has only just begun using the infringing brand, having announced the name change on June 22, 2016. Further, STCL's Dean, Donald J. Guter, has estimated that STCL only spent about $40,000 to complete the name change, indicating that the name change was easy and

inexpensive and so presumably would be easy and inexpensive for STCL to change its name back to STCL or to South Texas College of Law—Houston, for example.[17]. Exh. KK

UH is asking only that the new brand not be used pending trial. UH is not asking that STCL shut down or stop teaching its students. If STCL ultimately prevails in this matter, it similarly should be easy and inexpensive to change the name again. In stark contrast, allowing STCL to continue using its new brand will this case is tried will continually erode UH's distinctive marks and damage its goodwill that has been generated under these marks for almost 70 years.

In summary, the balance of the hardships favors UH and entry of the injunction.

### D.     A Preliminary Injunction Will Serve the Public Interest

People tend to hire lawyers when they are vulnerable. This makes the duty to protect the public from deception or confusion by law schools all the more important. Even in the normal commercial context, "the public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum,* 83 F.Supp.2d at 832 (granting preliminary injunction). The public interest is served by preventing STCL from confusing or deceiving the relevant public who look to lawyers to instruct them on law not to obfuscate it.

## V.     CONCLUSION

For at least the reasons presented above, UH respectfully moves the Court to enter the preliminary injunction submitted herewith.

---

[17] To be clear, UH does not seek to prevent STCL from using the word "Houston" in its name in a non-confusing manner, nor does UH seek to prevent STCL from using the phrase "College of Law" as part of its name. Notably, STCL has referred to itself as "South Texas College of Law / Houston" for years. Exh. J.

Dated August 1, 2016

*Of Counsel*:

**SUTTON MCAUGHAN DEAVER PLLC**

Elizabeth W. King
Texas Bar No. 00788710
S.D. Tex. No. 433,387
eking@smd-iplaw.com
Robert J. McAughan, Jr.
Texas Bar No. 00786096
S.D. Tex. No. 16,501
bmcaughan@smd-iplaw.com
Albert B. Deaver, Jr.
Texas Bar No. 05703800
S.D. Tex. No. 11,300
adeaver@smd-iplaw.com
Jeffrey A. Andrews
Texas Bar No. 24050227
S.D. Tex. No. 608,251
jandrews@smd-iplaw.com
Three Riverway, Suite 900
Houston, Texas 77056
Telephone: (713) 800-5700
Facsimile: (713) 800-5699

**THE BUZBEE LAW FIRM**

*s/Anthony G. Buzbee by permission ABD*
Anthony G. Buzbee
Attorney-in-Charge
Texas Bar No. 24001820
S.D. Tex. No. 22,679
tbuzbee@txattorneys.com
JP Morgan Chase Tower
600 Travis
Suite 7300
Houston, TX 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys For Plaintiffs The Board of Regents of the University of Houston System on behalf of the University of Houston System and its Member Institutions; The University of Houston System; and The Board of Regents of the University of Houston System*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document and exhibits, if any, have been served via the Court's ECF system on those counsel of record who have registered as filing users of the ECF system for this case pursuant to LR 5.1, and by electronic delivery on those counsel of record who are not registered as filing users with ECF, as of this 1st day of August 2016. In addition, a link to an Internet-based service facility having a copy of the foregoing document and exhibits for downloading has been emailed to all counsel of record.

*s/ Albert B. Deaver, Jr.*
Albert B. Deaver, Jr.

## CERTIFICATE OF CONFERENCE

The filing of this motion was discussed among the parties and the Court at the hearing held on July 15, 2016.

*s/ Albert B. Deaver, Jr.*
Albert B. Deaver, Jr.