UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE BOARD OF REGENTS OF THE UNIVERSITY OF HOUSTON SYSTEM ON BEHALF OF THE UNIVERSITY OF HOUSTON SYSTEM AND ITS MEMBER INSTITUTIONS; THE UNIVERSITY OF HOUSTON SYSTEM; and THE BOARD OF REGENTS OF THE UNIVERSITY OF HOUSTON SYSTEM, | § § § § § § § § § | |
| | § | CIVIL ACTION NO. 4:16-CV-01839 |
| Plaintiffs/Counter-Defendants, | § § | |
| v. | § § | |
| HOUSTON COLLEGE OF LAW, INC., formerly known as SOUTH TEXAS COLLEGE OF LAW, | § § § § § § | |
| Defendant/Counter-Plaintiff. | § | JUDGE KEITH ELLISON |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION TO EXCLUDE OR STRIKE EXPERT GABRIEL GELB**

Defendant Houston College of Law, Inc. (the "College") files this Response to Plaintiffs' ("U of H") Motion to Exclude or Strike Defendant's Expert Witness Gabriel Gelb (Dkt. No. 51, the "Motion") and respectfully shows the following:

**I.     INTRODUCTION**

The College's expert, Gabriel Gelb, surveyed the only relevant population of consumers: persons demonstrably likely to purchase the parties' legal-education services. To ensure he surveyed the core of this population, Mr. Gelb only used participants who had recently taken the LSAT, i.e., the persons most likely to purchase a legal education in the near future. Further, as appropriate in the context of a preliminary-injunction request, Mr. Gelb's survey focused on potential confusion under *current* marketplace conditions, not those at some undetermined time

1

in the future. The results of Mr. Gelb's survey are compelling and demonstrate little, if any, possibility of actual confusion among those most likely to buy the parties' legal-education services.

U of H dislikes Mr. Gelb's findings. But that dislike alone does not warrant the wholesale exclusion of Mr. Gelb's testimony and opinions. In its zeal to attack Mr. Gelb, U of H fails to discuss important—and to U of H, detrimental—legal authorities that diminish the importance of *Daubert* when there is no jury to protect and disfavor the exclusion of survey evidence. Further, many of U of H's complaints about Mr. Gelb's work apply equally to the work of its own expert, Mr. Poret. Last, U of H lodges a series of inaccurate, hypertechnical arguments that establish little more than the truism that one expert can always find fault in the work of another.

The Court should evaluate both experts' work and afford them such weight as the Court, in its good judgment, deems appropriate.

## II. LEGAL STANDARDS

District courts are "given wide discretion" to admit or exclude expert testimony, *London v. MAC Corp. of Am.*, 44 F.3d 316, 318 (5th Cir. 1995), and such decisions are reviewed for abuse of discretion, *Namer v. Broad. Bd. of Governors*, 628 F. App'x 910, 912 (5th Cir. 2015) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)) (attached as **Exhibit 1**). Accordingly, a district court's ruling on the admissibility of expert testimony will not be disturbed on appeal unless it is "manifestly erroneous." *Id.* (quoting *United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010)).

## III. ARGUMENT

### A. U of H omitted two key legal principles from its Motion.

U of H's rote recitation of *Daubert* and its progeny omits two important concepts that should guide the Court's analysis. *First*, Mr. Gelb's report supports the College's opposition to U of H's request for a preliminary injunction. And the absence of a jury at this stage—where the Court sits as the arbiter of both fact and law—makes the *Daubert* jury safeguards non-essential.

*Second*, the Fifth Circuit and other Courts of Appeals have long recognized that perceived flaws in the design or execution of a trademark survey go to the weight the offending survey should receive, not its admissibility. U of H's failure to even mention these important concepts highlights the tenuous nature of its request to exclude Mr. Gelb's report.

#### 1. *Daubert* has little applicability when the Court sits as the finder of fact, especially at the preliminary-injunction stage.

"Most of the safeguards provided for in *Daubert* are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). This approach makes sense, considering that the Supreme Court's "principal concern in *Daubert* was to prevent jury exposure to confusing and unreliable expert testimony." *Superior Offshore Int'l, Inc. v. Schaefer*, Civil Case No. H-11-3130, 2012 WL 6160873, at *3 (S.D. Tex. Dec. 11, 2012) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595-97 (1993)) (attached as **Exhibit 2**).

The protections of *Daubert* are inapplicable here for another reason: at the preliminary-injunction phase, district courts may rely on otherwise inadmissible evidence in determining whether to grant injunctive relief. *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, No. Civ.A 302CV2518-G, 2003 WL 23175432, at *1 (N.D. Tex. Aug. 15, 2003) (collecting Supreme Court and Fifth Circuit authorities and declining to exclude

an expert report of Mr. Gelb concerning trademarks at the preliminary-injunction stage) (attached as **Exhibit 3**). U of H offers no reason for the Court to deviate from this accepted practice.

At best, U of H's *Daubert* challenge is premature given the posture of the litigation. Thus, at a minimum, the Court should deny the Motion without prejudice to U of H's right to reassert it if the College offers Mr. Gelb's report (or testimony) at trial. *See id.* at *2.

### 2. Critiques of trademark surveys go to weight, not admissibility.

In trademark disputes, "[f]laws in a survey generally bear on weight, not admissibility." *Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 890 (S.D. Tex. 2011) (Ellison, J.); *see also Honestech, Inc. v. Sonic Solutions*, 430 F. App'x 359, 361 (5th Cir. 2011) ("[T]he general rule is that 'methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility.'") (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004)) (attached as **Exhibit 4**).[1] Thus, a survey "need not be perfectly conducted for the results to be admissible." *Children's Med. Ctr. of Dall. v. Columbia Hosp. at Med. City Dall. Subsidiary, L.P.*, No. 3-04-CV-2436-BD, 2006 WL 616000, at *6 (N.D. Tex. Mar. 10, 2006) (citing *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993) ("While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare . . . .") (citation omitted)) (attached as **Exhibit 6**).

This Court previously applied this same standard. In *Shell Trademark*, defendant challenged the admissibility of plaintiff's expert surveys regarding likelihood of confusion and

---

[1] "The majority rule is that while technical deficiencies can reduce a survey's weight, they will not prevent the survey from being admitted into evidence." 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:170 (4th ed.) (collecting cases from the Second, Fourth, Seventh, Ninth, Tenth, and Eleventh Circuits) (attached as **Exhibit 5**).

secondary meaning on multiple grounds, including (i) an under-inclusive universe, (ii) bias toward plaintiff's mark, (iii) improper suggestive and leading questions, and (iv) a failure to replicate market conditions. 765 F. Supp. 2d at 891. While acknowledging that plaintiff's surveys were flawed, this Court nevertheless concluded that defendant's "objections to the methodology of the surveys reduce the weight to which [the expert's] report will be given, but do not render it inadmissible." *Id.* at 892-93.[2]

U of H attacks Mr. Gelb's survey on many of the same grounds as those discussed in *Shell Trademark*, and the same analysis should apply here. As discussed below, U of H's challenges to Mr. Gelb's report lack substantial merit. And even if U of H's complaints were valid (which they are not), they should only go to the weight given to Mr. Gelb's report (and potential testimony), not its admissibility.

> **B.   Mr. Gelb's survey reflects the existing, real-world conditions in which consumers are exposed to the College's marks.**
>
> **1.   Mr. Gelb's survey tested for risk of confusion under *current* conditions—the appropriate time frame in the context of U of H's request for a preliminary injunction.**

U of H complains about Mr. Gelb's use of *actual* screen-shots of the College's webpage with the banner headline announcing a name change in the lower-left corner. Here is the webpage Mr. Gelb used:

---

[2] The Court decided *Shell Trademark* in the context of competing motions for summary judgment. 765 F. Supp. 2d at 887, 892 ("Therefore, [the expert's] report is admissible at this stage of the case."). Thus, as with the procedural posture here, in *Shell Trademark* the Court was evaluating the factual contentions, lessening the need for *Daubert*'s jury protections. *Gibbs*, 210 F.3d at 500.



The image, with the above banner announcing the name change, appears at least every eighteen seconds on the College's homepage.  *See* www.hcl.edu.  U of H claims that this image creates a "forced exposure" to the name-change banner.  (Motion at 4.)  But this image is, in fact, what the consumer actually sees on the College's website.  Moreover, the language U of H uses in its argument would lead one to believe that the banner is the only thing on the College's website.  It is not.  The complained-of banner disclosing the College's recent name change is in the lower-left corner.

Mr. Gelb's use of an image taken from the College's website—as it currently appears—is important given the procedural posture of this case.  Indeed, to obtain a preliminary injunction, U of H must demonstrate a "'likelihood of substantial and *immediate* irreparable injury.'"  *Tex. v.*

*United States*, 86 F. Supp. 3d 591, 672 (S.D. Tex. 2015) (emphasis added) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). Considering this immediacy requirement, the proper time frame to analyze consumer confusion in the preliminary-junction context is the present, not some unspecified time in the future. The website images Mr. Gelb used more closely mirror reality than U of H's expert's altered webpage images that omit the name change (and lawsuit information) altogether, making Mr. Gelb's survey results more reliable evidence of any potential confusion—or lack thereof—that exists in the market today. And it is the current state of the marketplace—not the future—that is relevant to deciding U of H's request for a preliminary injunction.

### 2. Mr. Gelb's sample size was sufficient.

U of H complains about Mr. Gelb's response rate and sample size. But U of H's own expert, Mr. Poret, was unconcerned with either of these issues when it came to his own reports and data. *First*, Mr. Poret did not disclose his response rate at all. *Second*, even a 1% response rate can be acceptable so long as the response representativeness is high.[3] Colleen Cook et al., *A Meta-Analysis of Response Rates in Web- or Internet-Based Surveys*, 60-6 EDUCATIONAL AND PSYCHOLOGICAL MEASUREMENT 821 (2000) (attached as **Exhibit 7**). What is important is whether there is some potential reason behind the response rate that would skew the results. *See id.* U of H does not identify any *specific* reasons for concern about response rate in its Motion. *Third*, U of H's complaint about sample size is unpersuasive in light of U of H's own expert's routine reliance on similar sample sizes. For example, in Mr. Poret's original report, he relied on:

---

[3] U of H concedes that the College is using the complained-of mark to "advertise[] and promote[] is [sic] legal education services." (Am. Compl. ¶ 73 (Dkt. No. 31).) And because Mr. Gelb's survey population was comprised *entirely* of members of the relevant population of persons likely to purchase the parties' legal-education services soon—i.e., those who have recently taken the LSAT—there can be little, if any, concern about the response representativeness of Mr. Gelb's survey.

- a test group of 65 and a control group of 33 for his webpage/hiring group test, for a total of only 98; and

- a test group of 48 and a control group of 27 for his webpage/business client group test, for a total of only 75.

(Expert Report of Hal Poret at 53 (Dkt. No. 27-3, Ex. B).)

U of H attempts to mask Mr. Poret's reliance on small sample sizes by combining those groups with the "text" test and control groups. Yet in its reply, U of H cites similar sample-size numbers (again combining webpage and name groups to make the numbers look bigger). (Reply Br. at 9 (Dkt. No. 45) (showing "Professional responsible for retaining attorney" with only 149 total respondents).) Thus, if U of H believes the sample sizes in Mr. Gelb's survey mandate its exclusion, U of H must expect the same fate for Mr. Poret's surveys.

### C. U of H's arguments regarding margin of error contradict its own expert's testimony that one "technically can't compute margins of error" in confusion surveys.

Surprisingly, Mr. Poret attacks Mr. Gelb's data based on alleged margin of error. (*See* Motion at 11.) But Mr. Poret (i) testified in his deposition that calculation of margin of error is inappropriate for surveys like these,[4] (ii) relied on similarly small sample sizes for his sub-

---

[4] Mr. Poret testified:
> Q: What calculations have you done to determine the—whether a particular sample size would equal a reliable result?
> A: I haven't done precise calculations, because *that wouldn't technically be mathematically allowed for this type of survey, which is almost—which is true for every litigation survey.* But I have so much experience with these statistics that I did look at all of these and determine for myself that they are statistically reliable.

(Poret Deposition (8/17/2016) at 170:14-23 (Dkt. No. 57-6, Ex. 6) (emphasis added).)

Mr. Poret further testified:
> Q. So let me make sure I understand your answer. Can I just ask the question, did you calculate margins of error?
> A. Not precisely.
> Q. Did you calculate margins of error imprecisely?
> A. Yes. And what I mean by that is that a nonprobability sample, *you technically can't compute margins of error*. It's just the rules of the math. And almost every survey, every

8

groups, (iii) failed to calculate margins of error of any kind in his initial report (consistent with his testimony that it was impossible to do so), (iv) failed to disclose any margins of error in his initial report if he did in fact calculate any, and (v) failed to disclose, either in his report or later, his method of calculation (formulas) if he in fact calculated those margins of error. Having done, or failed to do, all these things, now Mr. Poret intends to calculate margins of error for his survey data and use those calculations to attack Mr. Gelb.

This Court should ignore Mr. Poret's margins-of-error attack for at least three reasons. *First*, he is right. Calculation of margins of error on nonprobability samples is not appropriate. E. Deborah Jay, *Ten Truths of False Advertising Surveys*, 103 TRADEMARK REP. 1116, 1126 n.48 (2013) ("The margin of error cannot be calculated in the same manner [as with a probability sample] for a nonprobability sample.") (citing Shari S. Diamond, *Reference Guide on Survey Research*, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 359, 382-83 (3d ed. 2011) ("[W]hen respondents are not selected randomly from the relevant population . . . . [c]onfidence intervals technically should not be computed.")) (attached as **Exhibit 8**). *Second*, Mr. Poret *testified this was so*. *Supra* note 4. *Third*, he failed to calculate or disclose any margins of error in his initial survey report. This Court should not give credence to Mr. Poret's sudden change of course made without any explanation of any kind, much less a persuasive one.

D.   **U of H's remaining attacks on Mr. Gelb are unpersuasive.**

U of H's remaining critiques of Mr. Gelb's work are flat-out wrong, apply equally to Mr. Poret's work, or are meritless nitpicking. For example, U of H takes Mr. Gelb's survey to task for failing to caution the participant not to look elsewhere or online for answers. (Motion at 7.) U of H is incorrect. Mr. Gelb's survey instructed as follows: "Q3: While taking this survey,

---

confusion survey is a nonprobability sample, so you technically can't compute precise margins of error, but you can do it imprecisely.
(*Id.* at 173:15 to 174:2 (emphasis added).)

9

please do not consult with any other websites or other electronic or written materials." (Expert Report of Gabriel M. Gelb at 24 (Dkt. No. 39-45, Ex. UU).)

U of H further criticizes Mr. Gelb's survey for not "ensur[ing] that the individual who completed the survey was actually the actual LSAT taker." (Motion at 7.) Such validation procedures are usually needed when dealing with Internet panels to ensure the subjects—who frequently take surveys for money or rewards and have signed up to do so—do not farm out the task to others. Given that the contacts in Mr. Gelb's survey went to the potential law students' e-mail addresses as they supplied them to LSAC, and no Internet panel was involved, common sense tells us Mr. Poret's criticism is, at best, very weak.

U of H further knocks Mr. Gelb for not determining if the LSAT takers have applied to either of the parties' law schools, (Motion at 12), but Mr. Poret did not ask such a question of potential law students in either of his surveys. U of H claims that Mr. Gelb's control was not proper because it changed more than the name "Houston College of Law"—the name-change banner was also removed. (Motion at 6.) Yet U of H provides no rationale as to why this is problematic or how the control would have been improved had it *included* the banner. U of H complains that LSAT takers who opted in to be recruited were the only subjects contacted but fails to explain why that matters in this context. (Motion at 12.) At bottom, U of H's criticisms are hypertechnical points that prove little more than the truth of the maxim that one expert can always find something that is supposedly wrong with another expert's work.

In the final analysis, this Court should give weight to Mr. Gelb's survey of LSAT takers—the true and serious consumers of law school education—rather than Mr. Poret's initial shotgun survey or his subsequent survey of consumers of unknown resolve.

## IV. CONCLUSION

U of H omits key legal standards from its Motion that directly undercut its request for a wholesale exclusion of Mr. Gelb and his opinions. Further, U of H's critiques of Mr. Gelb's survey methodology and results are (i) wrong, (ii) equally applicable to the survey of U of H's own expert, (iii) hypertechnical complaints of little import, or (iv) all of the above. Thus, the College respectfully requests that the Court deny U of H's request to exclude or strike Mr. Gelb's survey and report.

Respectfully submitted,

    */s/ David J. Beck*
David J. Beck
State Bar No. 00000070
S.D. Tex. 16605
dbeck@beckredden.com
Beck Redden LLP
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

ATTORNEY-IN-CHARGE FOR HOUSTON COLLEGE OF LAW

Eric J.R. Nichols
State Bar No. 14994500
S.D. Tex. 13066
enichols@beckredden.com
Karson K. Thompson
State Bar No. 24083966
S.D. Tex. 2878342
kthompson@beckredden.com
Beck Redden LLP
515 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone: (512) 708-1000
Facsimile: (512) 708-1002

Parth S. Gejji
State Bar No. 24087575
S.D. Tex. 2917332
pgejji@beckredden.com
Beck Redden LLP
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

OF COUNSEL:
Lynne Liberato
State Bar No. 00000075
S.D. Tex. 3072
lynne.liberato@haynesboone.com
Kent Rutter
State Bar No. 00797364
S.D. Tex. 20519
kent.rutter@haynesboone.com
Haynes and Boone, LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600

Jeffrey M. Becker
State Bar No. 02015730
jeff.becker@haynesboone.com
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

Kenneth G. Parker (Admitted *pro hac vice*)
California Bar No. 182911
Haynes and Boone, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2016 the foregoing document and exhibits, if any, were served via the Court's CM/ECF system on plaintiffs' counsel of record, who have registered as filing users of the CM/ECF system, for this case pursuant to Local Rule 5.1, and that the same was also sent via facsimile or email.

| | |
|---|---|
| Anthony G. Buzbee | Elizabeth W. King |
| tbuzbee@txattorneys.com | eking@smd-iplaw.com |
| THE BUZBEE LAW FIRM | Robert J. McAughan, Jr. |
| JP Morgan Chase Tower | bmcaughan@smd-iplaw.com |
| 600 Travis | Albert B. Deaver, Jr. |
| Suite 7300 | adeaver@smd-iplaw.com |
| Houston, TX 77002 | Jeffrey A. Andrews |
| Telephone: (713) 223-5393 | jandrews@smd-iplaw.com |
| Facsimile: (713) 223-5909 | SUTTON MCAUGHAN DEAVER PLLC |
| | Three Riverway, Suite 900 |
| | Houston, Texas 77056 |
| | Telephone: (713) 800-5700 |
| | Facsimile: (713) 800-5699 |

                                                      */s/ Charles M. Jones II*
                                                      Charles M. Jones II