# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

The Board of Regents of the University
    of Houston System on behalf of the
    University of Houston System and
    its Member Institutions;
The University of Houston System; and
The Board of Regents of the University
of Houston System,

        *Plaintiffs*,

v.

South Texas College of Law,

        *Defendant*.

Civil Action No. 4:16-cv-01839

JURY

---

## PLAINTIFFS' SUPPLEMENTAL BRIEFING ON
## LIKELIHOOD OF CONFUSION

*Of Counsel*:

**SUTTON MCAUGHAN DEAVER PLLC**
Elizabeth W. King
Robert J. McAughan, Jr.
Albert B. Deaver, Jr.
Jeffrey A. Andrews
Three Riverway, Suite 900
Houston, Texas 77056
Telephone: (713) 800-5700
Facsimile: (713) 800-5699

**THE BUZBEE LAW FIRM**

Anthony G. Buzbee
Attorney-in-Charge
JP Morgan Chase Tower
600 Travis
Suite 7300
Houston, TX 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiffs*

September 20, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

TABLE OF EXHIBITS ............................................................................................................ v


I.      "Initial Interest Confusion" is a Court Created Doctrine Meant
        to Capture Confusion Prior to "Point of Sale," Represents
        One Part of the Likelihood of Confusion Analysis, and Also
        Supports the Requested Relief ....................................................................................... 2

II.     The Velvet Elvis and "Initial Interest Confusion" ......................................................... 6

III.    "Initial Interest Confusion" and UH's Motion for
        Preliminary Injunction .................................................................................................. 8

IV.     Likelihood of Confusion is not Limited to Confused
        "Purchasers" .................................................................................................................. 14

V.      Conclusion ..................................................................................................................... 16

# TABLE OF AUTHORITIES

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
518 F.3d 321 (5th Cir. 2008)..............................................................................10

*Australian Gold, Inc. v. Hatfield*,
944 F.2d 1235 (6th Cir. 1991)..............................................................................2

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*,
659 F.2d 695 (5th Cir. 1981)..............................................................................9

*Elvis Presley Enterprises Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1998)..............................................................2, 6, 7, 8, 12

*Fuji Photo Film v. Shinohara Shoji Kabushiki Kaisha*,
754 F.2d 591 (5th Cir. 1985)..............................................................................15

*Grotrian, Hefferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons*,
523 F.2d 1331 (2d Cir. 1975)..............................................................3, 4, 9, 12

*HRL Associates, Inc. v. Weiss Associates, Inc.*,
1989 WL 274391 (Trademark Tr. & App. Bd. July 21, 1989) ..........................5, 6

*Keds Corp. v. Renee Intern. Trading Corp.*,
767 F.2d 214 (5th Cir. 1985)..............................................................................4

*Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc.*,
221 F.2d 464 (2nd Cir. 1955)..............................................................................15

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*
511 F.3d 350 (3d Cir. 2007)..............................................................................2

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
818 F.2d 254 (2d Cir. 1987)..............................................................2, 7, 11

*Promatek Indus., Ltd. v. Equitrac Corp.*,
300 F.3d 808 (7th Cir. 2002)..............................................................................2, 4

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011)..............................................................................2

*Oreck Corp. v. U.S. Floor Systems, Inc.*,
803 F.2d 166 (5th Cir. 1986)..............................................................................14

*Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*,
765 F. Supp. 2d 884 (S.D. Tex. 2011)..............................................................4, 7, 9

*Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners Inc.*,
41 F.3d 223 (5th Cir. 1995) ...................................................................14, 15

*Syntex Laboratories, Inc. v. Norwich Parmacal Co.*,
437 F.2d 566 (2nd Cir. 1971) ........................................................................15

*Texas Tech University v. Spiegelberg*,
461 F.Supp 2d 510 (N.D. Tex. 2006) .............................................................11

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992) .........................................................................................1

*Weiss Associates, Inc. v. HRL Associates, Inc.*,
902 F.2d 1546 (Fed. Cir. 1990) .......................................................................6

**Statutes**

15 U.S.C. §§ 1114 ..............................................................................................2

15 U.S.C. §§ 1125 ...........................................................................................2, 7

**Other Authorities**

1962 Pub. L. No. 87-772, 76 Stat. 769 ......................................................1, 6, 14, 15

CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES
(4th ed., June 2016 Update) ............................................................................2

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
(4th ed. 2014, June 2016 Update) .....................................................2, 7, 8, 9, 14

# TABLE OF EXHIBITS

| EXHIBIT (Found at) | DESCRIPTION |
| --- | --- |
| B (Dkt. No. 27) | Original Report and Declaration of H. Poret |
| FF (Dkt. No. 27) | Declaration of Allison Regan |
| GG (Dkt. No. 27) | Declaration of Robert Poole |
| HH (Dkt. No. 27) | Comparison of website of Randall Sorrels before and after June 22, 2016 |
| NN (Dkt. No. 47) | Supplemental Report and Declaration of H. Poret |
| PP (Dkt. No. 45) | Deposition of D. Guter (SEALED) |
| QQ (Dkt. No. 45) | Deposition of D. Summers (SEALED) |
| UU (Dkt. No. 47) | 4 McCarthy on Trademarks and Unfair Competition § 23:6 (4th ed., June 2016 Update) 6 McCarthy on Trademarks and Unfair Competition § 32:159 (4th ed., June 2016 Update) 6 McCarthy on Trademarks and Unfair Competition § 32:184 (4th ed., June 2016 Update) |
| AAA (Dkt. No. 47) | STCL email to Sunbelt Consortium dated June 23, 2016 |
| HHH (Dkt. No. 56) | Declaration of Derrick Gabriel |
| III (Dkt. No. 56) | Declaration of Marcilyn Burke |
| KKK (Dkt. No. 64) | Declaration of Ava Novak Johnson |

| EXHIBIT<br>(Found at) | DESCRIPTION |
|---|---|
| LLL<br>(Dkt. No. 64) | Declaration of Nathan Andrew Neeley |
| MMM<br>(Dkt. No. 64) | Declaration of Carla Beatriz Palaez |
| NNN | 1962 Amendment to Lanham Act |
| OOO | 6 Callmann on Unfair Competition, Trademarks And Monopolies §§ 22.14 & 22.15 (4th ed., June 2016 Update) |
| PPP | *HRL Associates, Inc. v. Weiss Associates, Inc.*,<br>1989 WL 274391 (Trademark Tr. & App. Bd. July 21, 1989) |
| QQQ | 4 McCarthy on Trademarks and Unfair Competition § 23:5 (4th ed., June 2016 Update) |

The Court has ordered the parties to "submit supplemental briefs addressing the doctrine of initial interest confusion and its application to the case at bar." Dkt. No. 63 at 2. In its Order, the Court recognized that actionable likelihood of confusion is *not* limited to confusion only at the "point-of sale."[1]  *Id*. at 1. Indeed, as shown below, courts have held that the likelihood of confusion analysis under Lanham Act Sections 32(a) and 43(a) can consider "pre-sale" confusion, "point-of-sale" confusion and/or "post-sale" confusion.

The Lanham Act makes a likelihood of confusion actionable under Sections 32(a) and 43(a) regardless of when the confusion arises, regardless of whether a "sale" is consummated, and regardless of whether the confusion is or can be corrected. This is so because the Lanham Act has the dual purpose of protecting the public from confusion and protecting the senior trademark user from loss of goodwill and reputation. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 782 n.15 (1992) (Stevens, concurring) (purpose according to report accompanying the Lanham Act in 1946). Thus, as shown below, under the facts of this case, both the traditional eight–factor analysis for likelihood of confusion and the Fifth Circuit's "initial interest confusion" doctrine demonstrate that STCL's acts create a likelihood of confusion in the marketplace and should be enjoined.

---

[1]As the Court is aware, Lanham Act Sections 32(a) and 43(a) do *not* have an expressed time frame for the likelihood of confusion analysis. Indeed, any time frame limitation was eliminated in 1962, when Section 32(a) was amended by eliminating the requirement that confusion, mistake or deception had to be of "*purchasers* as to the *source of origin* of such goods or services." 1962 Pub. L. No. 87-772, 76 Stat. 769 (emphasis supplied) (attached as Exhibit NNN). Thus, UH cannot agree with the Court's characterization that it has "primarily focused on the likelihood of point-of-sale confusion." Dkt. No. 63 at 1. UH has focused on confusion caused by the "Houston College of Law" name and logo regardless of when such confusion occurs.

**I.    "Initial Interest Confusion" is a Court Created Doctrine Meant to Capture Confusion Prior to "Point of Sale," Represents One Part of the Likelihood of Confusion Analysis, and Also Supports the Requested Relief**

During the hearing on UH's pending motion, UH presented STCL testimony admitting that the "Houston College of Law" name and logo could cause potential law students to be confused as to an affiliation of "Houston College of Law" with UH.  *See* PI Hr'g Tr. at 94:19-96:10; Exh. PP at 75:9–77:5.[2]  STCL's Dean Guter testified that only after a potential student conducted "due diligence" through the STCL website would they understand that "Houston College of Law" is not the same as or not affiliated with UH.  This admission of a likelihood of confusion—whether it is labeled initial interest confusion or otherwise—supports the issuance of a preliminary injunction.

What has come to be labeled "initial interest confusion" is a species of confusion existing before the "point of sale," and which often can be cured or dissipated before a sale.[3]  *See, e.g.,* Dkt. No.47, Exh. UU (4 McCarthy § 23:6); Exh. OOO (6 Callmann §§ 22.14 & 22.15).  Initial interest confusion has been expressly recognized and applied in the Second, Third, Fifth, Seventh, Ninth, and Tenth Circuits[4] and has been applied by district courts in other circuits.

---

[2]  At his deposition, STCL's Dean, Donald Guter, would not admit that potential students would be "confused," but he did admit that potential students would be "mistaken."  The attempted distinction by Dean Guter is immaterial; the Lanham Act protects the market and UH from "confusion," "mistake" or "deceit."  *See* 15 U.S.C. § 1114(a) & 1125(a).

[3]  Again, "point of sale" is used merely as a temporal reference point in the typical commercial environment in which trademarks operate.  It is well settled that liability for trademark infringement or unfair competition does not require an actual "sale" or "purchase" of goods or services. *See infra.*

[4]  *See, e.g., Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 260 (2d Cir. 1987); *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC,* 511 F.3d 350, 358 (3d Cir. 2007); *Elvis Presley Enterprises, Inc. v. Capece,* 141 F.3d 188 (5th Cir. 1998); *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002); *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011); *Australian Gold, Inc. v. Hatfield,* 436 F.3d 1228, 77 U.S.P.Q.2d 1968 (10th Cir. 2006).

*Grotrian, Hefferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975) has been identified as one of the first cases applying the "initial interest confusion" doctrine. In *Grotrian Steinweg*, the Second Circuit affirmed a judgment of trademark infringement and unfair competition. The case involved directly competing, expensive pianos[5] sold to a limited class of sophisticated customers. *Id.* at 1340. In reviewing the district court's determination of likelihood of confusion, the Second Circuit agreed that, among other things, the telephone company mistaken listing of Grotian-Steinweg under the heading "Steinway Pianos" was evidence of actual confusion.[6] *Id.* In addition, Steinway relied on two surveys: one based on interviews with actual purchasers of Grotrian-Steinweg pianos, and the other based on street interviews with people who said they were interested in buying a piano in the next five years. *Id.* The district court considered these surveys evidence of actual confusion, and the Second Circuit held the district court did not err in "giving weight to the surveys as evidence of actual confusion." *Id.* at 1341 & 1342.

In challenging liability on appeal, Grotrian Steinweg argued there was no proof that anyone had ever bought or would buy a Grotrian-Steinweg piano thinking it was a Steinway or was guaranteed by Steinway. Therefore, according to Grotrian Steinweg, no infringement was shown. In response, and consistent with the express wording of the Lanham Act, the Second Circuit declined to hold "that actual or potential confusion at the time of purchase necessarily must be demonstrated to establish trademark infringement under the circumstances of this case."

The issue here is not the possibility that a purchaser would buy a Grotrian-Steinweg thinking it was actually a Steinway or that Grotrian had some

---

[5] $5,000 to $13,000 in 1975. *Id.* at 1339.

[6] This "directory" confusion is remarkably similar to the confusion experienced by Carol North at the Sunbelt Consortium when she mistakenly changed UH's directory entry to "Houston College of Law." *See* Exh. FF & Exh. AAA.

connection with Steinway and Sons. The harm to Steinway, rather, is the likelihood that a consumer, hearing the "Grotrian-Steinweg" name and thinking it had some connection with "Steinway", would consider it on that basis. The "Grotrian-Steinweg" name therefore would attract potential customers based on the reputation built up by Steinway in this country for many years. The harm to Steinway in short is the likelihood that potential piano purchasers will think that there is some connection between the Grotrian-Steinweg and Steinway pianos.

*Id*. at 1342.

This Court has recognized the damage that can occur when the public believes the senior and junior users are affiliated with each other. *See Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 900 (S.D. Tex. 2011) (holding in a trade dress case, "In addition, even if the names [on the labels] eliminated a risk that consumers would think the two products were the same, there could still be a risk that they would be led to believe that LUBRIGUARD was associated with Shell.") citing to and quoting *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 222 (1st Cir. 1989) (holding in a registered trademark case, "argument that label resolves risk of confusion 'fails to address the possibility that individuals might assume that Apples were made by Keds.'"). That is precisely one of the concerns UH has: the relevant public will believe "Houston College of Law" is or is affiliated with the University of Houston or its college of law even if the Houston College of Law utilizes "formerly South Texas College of Law" on its website and marketing materials.

As the Seventh Circuit described, when there is pre-sale confusion, such as an individual believing there is an association between the University of Houston's college of law and "Houston College of Law," the damage has been done and neither UH nor STCL can "unring the bell." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808. 812–13 (7th Cir. 2002) (holding "[t]hat consumers who are misled to Equitrac's website are only briefly confused is of little or no consequence. In fact, 'that confusion as to the source of a product or service is eventually dispelled does not eliminate the trademark infringement which has already occurred.' What is

important is not the duration of the confusion, it is the misappropriation of Promatek's goodwill. Equitrac cannot unring the bell.") (internal citations omitted).

In addition to the courts, the United States Patent and Trademark Office has applied "initial interest confusion" to reject trademark applications. In *HRL Associates, Inc. v. Weiss Associates, Inc.*, 1989 WL 274391 (Trademark Tr. & App. Bd. July 21, 1989), the applicant argued that purchasers of its computer software were sophisticated, and the purchasing process typically lasted 9 months. It argued these sophisticated customers are not confused as to source at the time of purchase, actually know the specific manufacturer with whom they are dealing, and that any initial confusion is dissipated by virtue of the long and involved purchasing decision process. *Id*. at 3 (attached as Exhibit PPP).

In reviewing the rejection of the application to register the conflicting trademark, the Trademark Trial and Appeal Board assumed there was ***no "point-of-sale" confusion*** and still affirmed the likelihood of confusion rejection of the application holding:

> [T]he Trademark Act does not make a distinction between confusion arising at an early stage in the purchasing process and confusion arising at a later stage. Registration should be denied under the Trademark Act when there exists likelihood of confusion, no matter where it occurs in the marketing or sale of similar goods under similar marks. It is logical to so find, because confusion of a potential purchaser early in the purchasing decision is just as likely to cause injury to [a trademark owner] as confusion that may arise later in the purchasing decision. The Board has, in the past, found likelihood of confusion where source confusion occurred even after the point of purchase. For example, such post-sale confusion may exist among the ultimate users of the goods.
>
> * * *
>
> We find here that, even though the parties' programs are purchased by discriminating purchasers after an extended period of negotiation and deliberation, there is nevertheless a likelihood of confusion, at the initial stage of the purchasing process, when substantially identical programs are sold under the parties' similar marks.

*Id.* at 3–4.  The Federal Circuit affirmed the refusal to register based on an analysis of the traditional likelihood of confusion factors (*e.g.*, similarity of marks, similarity of goods, etc.) and did not reach the TTAB's "initial interest confusion" analysis.  *Weiss Associates, Inc. v. HRL Associates, Inc.*, 902 F.2d 1546, 1549 (Fed. Cir. 1990).

In *HRL Associates*, the Trademark Trial and Appeal Board noted "[t]he Board has, in the past, found likelihood of confusion where source confusion occurred even ***after the point of purchase***."  1989 WL 274391, at *3.  Such was the confusion in the Ferrari replicar case.  *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1245 (6th  Cir. 1991) (holding in a replicar trade dress case that "[s]ince Congress intended to protect the reputation of the manufacturer as well as to protect purchasers, the Act's protection is ***not limited to confusion at the point of sale***.  Because Ferrari's reputation in the field could be damaged by the marketing of Roberts' replicas, the district court did not err in permitting recovery despite the absence of point of sale confusion.*")* (emphasis added).  Similarly, confusion ***before the point-of-sale*** also is relevant in determining whether a likelihood of confusion exists.  The 1962 amendments to the Trademark Act deleted the qualifying term "purchasers" in the phrase referring to marks likely "to cause confusion, or to cause mistake, or to deceive."  Exh. NNN, 1962 Pub. L. No. 87-772, 76 Stat. 769 (emphasis added).  *See, e.g., Marathon Mfg. Co. v. Enerlite Prod. Corp.*, 767 F.2d 214, 221 (5th Cir. 1985); *HRL Associates,* 12 WL 274391, at *4 (holding "This amendment evidenced intent to remove any limitation of such standards to purchasers of goods.  That is to say, Section 2(d) relates to ***potential as well as actual purchasers***.") (emphasis added).

## II.    The Velvet Elvis and "Initial Interest Confusion"

At the August 26th Hearing, STCL erroneously argued that the Fifth Circuit's *Elvis Presley* decision requires that pre-sale confusion result in a purchase to be actionable under the

Lanham Act. Specifically, STCL argued that liability was found in *Velvet Elvis* because "even after the initial interest confusion is dispelled, the consumer says, "Well, this bar has nothing to do with Elvis Presley, but I'm thirsty and now I'm going to have a beer." PI Hr'g at 170:6–13. STCL argued that without a purchase, pre-sale confusion causes no harm to the trademark owner and cannot be actionable. STCL's analysis is wrong on several levels.

In *Elvis Presley Enterprises, Inc. v. Capece,* 141 F.3d 188 (5th Cir. 1998), plaintiff alleged that the unauthorized use of "Elvis" in a restaurant's name was, among other things, trademark infringement and unfair competition under Sections 32(a) and 43(a) of the Lanham Act. *Id*. at 192. The Fifth Circuit held that for plaintiff to prevail it "must show that the defendants' use of "The Velvet Elvis" mark and image, likeness, and other references to Elvis Presley creates a likelihood of confusion in the minds of **potential consumers** as to the source, affiliation, or sponsorship of the Defendant's bar. *Id*. at 193. The Fifth Circuit did **not** hold that a completed sale was required for actionable confusion to be found.[7] On the contrary, the court held:

> **Actual confusion that is later dissipated by further inspection of the goods, services, or premises, as well as post-sale confusion, is relevant to a determination of a likelihood of confusion**. *See* 3 McCarthy, *supra*, §§ 23:6–: 7. "**Infringement can be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion**." 3 *id.* § 23:6; *see also Dr. Seuss Enters.,* 109 F.3d at 1405 (noting that no sale must be completed to show actual confusion); *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 259 (2d Cir. 1987) (finding liability for initial-interest confusion). **Initial-interest confusion gives the junior user credibility during the early stages of a transaction and can possibly bar the senior user**

---

[7] STCL erroneously argued at the hearing that Section 43(a) "requires that there be damages associated with it for the cause of action to exist." PI Hr'g Tr. at 160:2-5. As the Court knows, Section 43(a) only requires that the trademark owner "believes that he or she is *or is likely to be damaged* by such act." 15 U.S.C. § 1125(a)(1) (emphasis added); *see also Shell Trademark Mgmt.,* 765 F. Supp. 2d at 895 (quoting Section 43(a)). This is consistent with courts not requiring a completed sale for liability under Sections 32(a) and 43(a).

> *from consideration by the consumer once the confusion is dissipated*. *Id.;* 3
> McCarthy, *supra*, § 23:6.

*Id*. at 203–04 (emphasis supplied). Thus, the Fifth Circuit recognized, as other courts throughout the years have, that a consummated sale is *not required* for liability under Sections 32(a) or 43(a). The Fifth Circuit also recognized that pre-sale confusion—as well as post-sale confusion—can give rise to liability. *Id*. The Fifth Circuit recognized that even if pre-sale confusion is cured, harm to the senior user may still occur by barring "the senior user [here, UH] from consideration by the consumer once the confusion is dissipated." *Id*. Notably, the Fifth Circuit did *not* hold that pre-sale confusion had to result in a lost sale to the trademark owner, as STCL argued at the hearing. Indeed, the Fifth Circuit noted that if a patron was confused and entered the Velvet Elvis restaurant because of the unauthorized use of "Elvis," the *defendant may* benefit through sale of a cover charge, food or drink.[8] *Id*. at 204.

The Fifth Circuit's analysis stands. Likelihood of confusion is *not limited* to confusion at the time of sale, and includes confusion that is cured before the point-of-sale, confusion before the point of a sale that is *not cured*, confusion at the point-of-sale, confusion after the point-of-sale, and confusion without a sale at all. Likelihood of confusion is determined by considering the totality of the circumstances with no single factor controlling the outcome. *Velvet Elvis*, 141 F.3d at 194.

## III.    "Initial Interest Confusion" and UH's Motion for Preliminary Injunction

STCL has admitted that that the "Houston College of Law" name or logo could cause potential law school students to mistakenly believe that "Houston College of Law" is the same as or affiliated with UH, and that such confusion could only be dispelled by the student conducting

---

[8] The *Velvet Elvis* court noted "[o]ne witness who was initially confused stayed and purchased a beer." *Id*. at n. 7.

"due diligence" through the STCL website. STCL's admission makes it clear that the doctrine of "initial interest confusion" as recognized by the Fifth Circuit has application to this case. Indeed, this Court has noted how the damage would have already been done if it takes close examination by the relevant public to eliminate the confusion. *See Shell Trademark Mgmt. B.V.,* at 900; *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 704 (5th Cir. 1981) (holding "As the Fifth Circuit has stated, 'Even if close examination would differentiate the products, that is not sufficient to dispel the initial confusing similarity.'")

It should be noted that traditionally "initial interest confusion" is a phrase applied to fleeting confusion that is resolved. [9] Exh. UU, 4 McCarthy § 23.6. Requiring a person to conduct "due diligence" research on a website, or by other means, to ascertain the true identity of the service provider is far beyond fleeting confusion and outside the bounds of traditional "initial interest confusion." Nonetheless, comparisons between this case and the "initial interest confusion" doctrine can be made. As in *Grotrian Steinweg,* the competing marks are confusingly similar, the goods/services directly compete, the universe of potential purchasers is small and sophisticated, and an inference can be drawn that STCL intended to ride on UH's reputation. *See* PI Hr'g Tr. at 9:7–31:9. The fact that STCL admits that the confusion is not easily dispelled, but requires due diligence and investigation of STCL's website only enhances the reality that the confusion caused here is well beyond "initial interest." Thus, the Court is

---

[9] In this regard, UH would point out that the 2013 Market Survey commissioned by STCL noted that South Texas College of Law was continually being confused with Texas Southern University and its college of law. The passage of time did not eliminate the confusion existing between two marks that are notably less confusingly similar than "Houston College of Law" and "University of Houston." *See* Dkt. No. 40 (Sealed), Exh. JJ at HCL485 ("The most frequently mentioned reason is that the name 'South Texas College of Law' is often confused with other schools, particularly Texas Southern University.") & HCL447-48, HCL 501, 519 & 548. *See also* PI Hr'g Tr. at 18:8–22 & 100:1–9.

well situated to find a likelihood of success on the merits based on "initial interest confusion" without exploring the outer boundaries of the doctrine or reconciling commentators.

It bears repeating, however, that UH filed its motion for preliminary injunction based on a likelihood of confusion that exists based on the totality of the circumstances as demonstrated by evaluating the eight digits of likelihood of confusion. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). More specifically, the evidence of record demonstrates that the competing marks are substantially similar and that there has been actual confusion. In addition to showing likelihood of confusion among the relevant group, the Poret surveys demonstrate this substantial similarity of the marks. Further, the competing services are identical for purposes of infringement and unfair competition. *See, e.g.,* PI Hr'g Tr. at 53:11-15. And STCL admits that potential students may become mistaken as to identity or affiliation.

Contemporaneous with the filing of this supplemental brief, UH has filed a supplement to its hearing evidence providing three additional declarations recounting instances of actual confusion. One instance involves a potential law student at the 2016 Graduate and Professional School Fair in Lubbock, Texas on September 13, 2016, who was confused into believing that "Houston College of Law" is affiliated with UH. In this instance, the potential law student believed he had been speaking with the University of Houston's college of law about the possibility of attending law school, when in fact, he had been speaking with representative of STCL under the "Houston College of Law" name and logo. This potential law student remained confused even after finishing his conversation with STCL. *See* Exh. KKK.

A second instance of actual confusion involves a potential law student making application to STCL, but mistakenly calling the University of Houston Law Center for assistance

with the application process. Specifically, this potential student called to seek waiver of the application fee. UH does ***not*** require an application fee, but STCL does. *See* Exh. LLL.

The third instance of actual confusion involves a ***current UH law student*** who mistakenly signed up for the Multi-State Professional Responsibility Exam (MPRE) at the "Houston College of Law" location rather than at her desired UH location. *See* Exh. MMM. It is understandable that even a 3L UH law student would be confused by "Houston College of Law's" name and logo in light of the numerous other incidences of actual confusion among law professors, the U.S. Postal Service, the Sunbelt Minority Recruitment Program, and the Texas Board of Law Examiners, to name a few. *See* Exhs. FF, GG, HH, AAA, HHH, III, KKK, LLL, MMM & Dkt. No. 56 at § II.C.

These recent examples and the other examples UH has provided the Court demonstrate actual confusion. *See Texas Tech University v. Spiegelberg*, 461 F.Supp 2d 510, 522–23 (N.D. Tex. 2006) (Determining that actual confusion is not necessary for a finding of a likelihood of confusion and noting that very little proof of actual confusion would be necessary to prove the likelihood of confusion) *citations omitted*. In addition to proving actual confusion, these incidents also prove the confusing similarity of the competing marks and also stand as a proxy for a likelihood of confusion among the relevant public.

Despite this evidence, STCL argues that potential law school applicants are sophisticated and will not be confused as to which school they are applying. *See, e.g.,* Dkt No. 38 at 30. Regardless of how sophisticated law students are, a likelihood of confusion—no matter when it occurs—is still actionable trademark infringement. *See Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 260 (2d Cir. 1987) ("The district court concluded that, 'even though defendant's business is transacted in large quantities only with sophisticated oil traders, there is

still and nevertheless a likelihood of confusion.'  We agree.").  *See also Grotrian Steinweg*, 523 F.2d at 1341–42.

STCL argues that a potential law student, even if confused by the "Houston College of Law" name or logo, would cure that confusion before the student "purchased" enrollment in STCL.  However, not all confused or mistaken students will conduct the due diligence that STCL admits is required to disabuse the confusion.  And even if the confusion that "Houston College of Law" is the same entity as or affiliated with the "University of Houston" is dispelled through due diligence research, such knowledge may come at a time that is too late to undo the harm to UH.

Consider the scenario where a potential law student hears a "Houston College of Law" professor speak at an event and is unimpressed or offended to the point of striking "Houston College of Law" from her list of law schools.  If she is confused because of the similarity of the "Houston College of Law" name or logo[10] to UH's name or logo and mistakenly strikes UH from her law school application list, such initial or presale confusion will "bar the senior user" [UH] from consideration."  *Velvet Elvis,* 141 F.3d at 204.  This scenario is further exacerbated by the fact that UH's admissions application deadline ends ***before*** STCL's deadline.[11]  Thus, a confused student could become unconfused too late to apply to UH, but could still apply to STCL.  In fact, that may very well be the case with the prospective law student who attended the Graduate and Professional School Fair thinking he had spoken with a representative from the University of

---

[10] UH has provided the Court with an example of actual confusion in which an STCL professor was misidentified on his seating placard as being from the "University of Houston Law Center."  Exh. III.  Mr. Poret surveyed confusion caused by the word mark HOUSTON COLLEGE OF LAW by itself, as well as the "Houston College of Law" logo as used on the STCL website.  See Exh. B at 9–14 & Exh. NN at 5.

[11] UH's admissions application deadline ends on February 15, and STCL's deadline ends a month later on March 15.  *See e.g.,* http://www.law.uh.edu/admissions/admissions-process.asp; http://www.stcl.edu/admissions/.

Houston's college of law when, in fact, he had spoken with representatives from "Houston College of Law." *See* Exh. KKK. If that prospective law student remains confused, he may miss UH's application deadline but not STCL's. Further, negative comments by a confused student to his or her peers and other potential law students may cause additional reputational and economic harm to UH.[12]

And the confusion extends beyond potential law school students. The University of Houston Law Center provides many other services to the public in addition to educating its students in its college of law. These additional services include, but are not limited to, providing legal clinics to the public (*see, e.g.,* the UH Center for Consumer Law People's Law School: a free program taught by volunteer judges, lawyers and law professors focused on sharing information with the general public about their legal rights and the role these rights play in their daily lives); providing continuing legal education programs to licensed attorneys (*see, e.g.*, A.A. White Dispute Resolution Center: providing dispute resolution seminars to licensed attorneys); and soliciting and receiving financial donations from benefactors that may or may not be lawyers. For a listing of the UH Law Center's centers, institutes, and select programs, *see* http://www.law.uh.edu/academic/centers-and-institutes.asp Any negative feelings created by STCL (or even an STCL grad) while a person is confused as to identity or affiliation may bar UH from receiving that person's support of a legal clinic or donation to the school.

The point is simply this: a likelihood of confusion exists as determined by the traditional digits for evaluating confusion.

---

[12] It is unreasonable to believe that the potential student (if disabused of her confusion) would hunt down the person she spoke to rectify her mistaken comments.

**IV.    Likelihood of Confusion is not Limited to Confused "Purchasers"**

The concept of when confusion occurs cannot be divorced from who is being confused. The Court's Order (Dkt. No. 63) indicates that the Court believes the relevant group for likelihood of confusion includes at least "prospective law students" as well as actual "purchasers."  STCL seemed to agree at the hearing.  PI Hr'g Tr. at 150:15-20.[13]

UH's position is supported by case law, which holds that the effect of the 1962 amendment to the Lanham Act is to make clear that the group likely to be confused need not be *actual* customers or retail customers; they can be *potential purchasers* too.  *Marathon Mfg. Co. v. Enerlite Products Corp.*, 767 F.2d 214, 226 U.S.P.Q. 836 (5th Cir. 1985); *see also Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners Inc.*, 41 F.3d 223, 227 (5th Cir. 1995) (holding "To prove its claim of trademark infringement [plaintiff] was required to show that [defendant's] use of [the mark] was likely to create confusion in the minds of *potential* purchasers as to source, affiliation, or sponsorship of the parties' products.") (emphasis added); *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir. 1986); *see also* 4 McCarthy, § 23:5 (Exh QQQ).  Thus, there should be no dispute that students considering attending law school ("prospective law students") are part of the "group likely to be confused."  The Poret survey queried this group and found a 25% net confusion rate caused by the "Houston College of Law" name and Logo as presented on the website.  Exh. NN at 5.  And confusion will continue to exist in this part of the market each year as new students replenish the "prospective law students" group.

---

[13] In response to the Court's question whether STCL agrees that "the relevant market for our purposes is prospective law students," STCL replied, "Yes, sir.  Without getting too far in the weeds, there's some dispute over whether that would include prospective, their parents or not."

In addition to "prospective law students" UH contends that the relevant group for a likelihood of confusion analysis includes at least: parents of prospective law students; persons that may need to hire a lawyer for representation; the public that utilizes the UH Law Center's institutes, centers, and select programs, as well as persons hiring lawyers as employees.

The Fifth Circuit has held that evidence of confusion in others permits the inference of confusion of purchasers. In *Fuji Photo Film v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 597 (5th Cir. 1985), the Fifth Circuit held it error to discount evidence of actual confusion on the part of distributors and trade show visitors because confusion in customers could be inferred from confusion in retailers, sales clerks, distributors. *See also Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners Inc.*, 41 F.3d 223, 228 n.11 (5th Cir. 1995); *Syntex Laboratories, Inc. v. Norwich Parmacal Co.*, 437 F.2d 566, 568 (2nd Cir. 1971) (holding that the 1962 amendment shows a clear congressional intent to "outlaw the use of trademarks which are likely to cause confusion, mistake, or deception of any kind, ***not merely of purchasers nor simply as to source of origin***." )

The Poret Survey queried potential employers of lawyers and persons at businesses having hiring authority because these groups may be involved in hiring a lawyer based in part on what law school that lawyer attended. Mr. Poret found a net confusion rate among these groups of 18.6%. Exh. B at 63. Thus, even if the Court finds persons are not properly part of the likelihood of confusion group, confusion rates among these groups are still evidence of a likelihood of confusion among potential law students.

Similarly, other courts have held that non-purchasers whose confusion could ***influence*** purchasers may be relevant to the likelihood of confusion analysis. For example, in *Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc.*, 221 F.2d

464 (2nd Cir. 1955), the purchasers of defendant's cheap imitation of plaintiff's distinctive clock knew what they were buying. But the Second Circuit concluded that guests in the homes of those purchasers might be led to believe that the imitation displayed by their host was, in fact, the prestigious timepiece. *Id.* Similarly, purchasers of Ferrari parts to build on another automobile's chassis understood what they bought. Yet, the confusion to those outside this realm remained actionable. *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1245 (6th Cir. 1991).

The Poret Survey queried parents of potential law students because they typically have influence over the potential students' purchasing decision, especially when financial aid issues are involved. Mr. Poret found a net confusion rate among this group of 17.0%. Thus, even if the Court finds parents of law students are not properly classified as "purchasers," confusion among this group is still evidence of a likelihood of confusion among potential law students since they influence the purchasing decision.

## V.    CONCLUSION

UH has presented the Court with compelling evidence that prospective law students—among other members of the relevant public—likely will be confused as to whether "Houston College of Law" is affiliated with, connected to, or in association with UH; or whether the legal services provided under the "Houston College of Law" name or logo originate with, are sponsored by, or are approved by UH. This evidence establishes that UH is likely to succeed on its claim of unfair competition and trademark infringement, and that a preliminary injunction is warranted.

In addition, the facts of this case are well within the initial interest confusion doctrine enunciated by the Fifth and other circuits. The confusion caused by STCL is not "fleeting," but rather STCL has admitted that only by researching the origin of "Houston College of Law" on

the STCL website can a member of the relevant public uncover the true affiliation and origin of its law school.

The confusion caused by STCL's decision to change its name and logo has caused at least reputational injury to UH, and such injury will continue unless enjoined by this Court.

Dated September 20, 2016

**THE BUZBEE LAW FIRM**

*Of Counsel*:

*s/Anthony G. Buzbee by permission ABD*
Anthony G. Buzbee
Attorney-in-Charge
**SUTTON MCAUGHAN DEAVER PLLC**
Texas Bar No. 24001820
S.D. Tex. No. 22,679
Elizabeth W. King
tbuzbee@txattorneys.com
Texas Bar No. 00788710
JP Morgan Chase Tower
S.D. Tex. No. 433,387
600 Travis
eking@smd-iplaw.com
Suite 7300
Robert J. McAughan, Jr.
Houston, TX 77002
Texas Bar No. 00786096
Telephone: (713) 223-5393
S.D. Tex. No. 16,501
Facsimile: (713) 223-5909
bmcaughan@smd-iplaw.com
Albert B. Deaver, Jr.
Texas Bar No. 05703800
S.D. Tex. No. 11,300
adeaver@smd-iplaw.com
Jeffrey A. Andrews
Texas Bar No. 24050227
*Attorneys For Plaintiffs The Board of*
S.D. Tex. No. 608,251
*Regents of the University of Houston*
jandrews@smd-iplaw.com
*System on behalf of the University of*
Three Riverway, Suite 900
*Houston System and its Member*
Houston, Texas 77056
*Institutions; The University of Houston*
Telephone: (713) 800-5700
*System; and The Board of Regents of the*
Facsimile: (713) 800-5699
*University of Houston System*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document and exhibits, if any, have been served via the Court's ECF system on those counsel of record who have registered as filing users of the ECF system for this case pursuant to LR 5.1, and by mail on those counsel of record who are not registered as filing users with ECF, as of this 20th day of September 2016.

*s/ Albert B. Deaver, Jr.*
Albert B. Deaver, Jr.